JACK C. FLEMING, *Appellee,* v. GEORGE C. ETHERINGTON, *Appellant.*

and

No. 50,790

ALLEN R. DODGE, *Appellee,* v. GEORGE C. ETHERINGTON, *Appellant.*

(610 P.2d 592)

Opinion filed May 10, 1980.

*Randall E. Fisher,* of Barta & Barta, of Salina, argued the cause and was on the brief for appellant.

*William B. Stokes,* of King, Stokes, Knudson & Nitz, Chartered, of Salina, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

HOLMES, J.: Two cases in the Saline County District Court were consolidated for post-judgment proceedings and have been consolidated on appeal. The defendant, George C. Etherington, appeals from orders of the district court entered during proceedings in aid of execution in which the district court denied his motion for an in camera inspection of certain documents and found him in contempt of court for failing to comply with prior orders of the court.

In separate cases, Jack C. Fleming and Allen R. Dodge filed suits to recover on promissory notes executed by the defendant Etherington. On June 8, 1976, Fleming was granted judgment for the sum of $4,311.01, interest and costs, and Dodge was granted judgment for $3,250.00, interest and costs. No appeals were taken from these judgments and their validity is not an issue on appeal. Subsequently the two cases were consolidated for further proceedings in attempts to secure payment of the judgments. To date all such efforts have been unsuccessful. Defendant was represented in the original proceedings by Philip R. Herzig, a Salina attorney.

The record reveals that defendant is a prominent real estate broker and developer in Salina, having been in business for several years. He was involved in several closely held family trusts and corporations. G & K, Inc., was incorporated in 1964 and the 1977 records in the office of the Secretary of State revealed the defendant was president, secretary, treasurer and sole director. The stock, however, was held by defendant's children. A. B. Seelye Co., Inc., was incorporated in 1959 and defendant was shown as secretary, treasurer and as a member of the board of directors. The stock was held by defendant's children and G & K, Inc. Defendant also was the trustee of the Florence Anna Etherington Trust and his personal automobile was furnished to him by Nursing Home Foundation, Inc. Following various attempts to collect the outstanding judgments,

plaintiffs instituted proceedings in aid of execution under K.S.A. 60-2419 and defendant was ordered to appear for examination on February 8, 1978. As a part of such proceedings, a subpoena duces tecum was issued to the defendant commanding him to bring with him:

"1. The last 3 yrs. tax returns of any business entity that you are an officer, director, own stock or receive any monies; 2. Personal income tax returns for the past three years. 3. Stock certificates held by you in your name or your name as custodian for another in any corporation or other business entity or trust; 4. Tax returns of any trust or other entity that you may handle funds on behalf of said entity; 5. Passbooks and all other documentation of all of your investments; 6. Titles to all vehicles owned or operated by you."

On February 7, 1978, a motion to quash the subpoena was filed pro se by the defendant. In the motion filed by defendant he stated he owned no stock; that although he was an officer and director of certain corporations, he did not have access to the corporate tax returns or records; that he was not authorized by the stockholders to produce such records; that he had no passbooks or investments and owned no motor vehicles. Defendant then retained Robert H. Royer, Jr., an attorney of Abilene. Mr. Royer also filed a motion to quash the subpoena duces tecum. After various proceedings and hearings the motions were overruled on October 24, 1978. On January 2, 1979, an order was issued by the court directing the defendant to produce the books and records pursuant to the subpoena duces tecum on January 15, 1979, at his accountant's office for inspection by the accountant for the plaintiffs. On January 11, 1979, Barta and Barta, attorneys of Salina, filed a motion on behalf of the defendant asking the court to conduct an in camera inspection of the books and records and make a determination of what should be made available to plaintiffs. This motion was overruled on January 12, 1979. The defendant failed to produce the books and records on January 15, 1979, and on January 16th a citation in contempt was filed and an order entered for defendant to appear on January 29, 1979, to show cause why he should not be held in contempt for failure to comply with the subpoena duces tecum and the order of January 2, 1979. On January 29, 1979, a hearing was held and the court found defendant in contempt of court and ordered him committed to the Saline County jail until he purged himself of contempt by producing the requested records and documents. The commitment was stayed upon application of the defendant and he

appeals (1) from the order of the court overruling his motion for an in camera examination of the documents and (2) from the order finding him in contempt of court for failure to comply with the court's orders.

Appellant's first point on appeal is that the court abused its discretion when it refused to conduct an in camera inspection of the various books and records of the family corporations. It is appellant's contention that the information which might be revealed concerned the rights of third parties not parties to the litigation and as such they were entitled to be protected from revealing such information to plaintiffs. Appellant relies upon *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.,* 216 Kan. 306, 532 P.2d 1263 (1975), wherein this court stated:

"Finally, we think it timely to observe that where records or documents of a confidential nature are produced in court in response to a subpoena or other court order, the court is vested with authority to issue such protective orders as it deems advisable to keep the information from prying eyes and to prevent its misuse." p. 321.

It is clear that the trial judge is vested with broad discretion in deciding whether an in camera examination of documents is necessary. The court is not required to grant such an examination in every instance. The question is, did the trial judge abuse his discretion in the case at bar? We think not.

Our statute on proceedings in aid of execution, K.S.A. 60-2419, is similar in nature to Fed. R. Civ. Proc. 69, which likewise provides procedures for the enforcement of money judgments. The scope of Rule 69 is discussed in 12 Wright & Miller, Federal Practice and Procedure: Civil § 3014 at 72 (1973):

"The judgment creditor is allowed discovery so that he may find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution  . . . .  The scope of examination is very broad, as it must be if the procedure is to be of any value, but third persons can be examined only about the assets of the judgment debtor and cannot be required to disclose their own."

Many of the cases under the federal rules involve situations in which a third party, not involved in the litigation, is sought to be examined about assets which might have some connection with the debtor. In the case at bar it was the debtor who was being requested to furnish information and documents about his possible connection with third parties. The situations are similar insofar as the protection of the interests of the third party

non-litigant is concerned. In *Burak v. Scott,* 29 F. Supp. 775 (D.D.C. 1939), the court stated:

"In a proper case Rule 69, Federal Rules of Civil Procedure, permits examination by the taking of depositions, as provided for in said rules, in aid of judgments or executions. This is a salutary advance in those jurisdictions which theretofore did not have the advantage of statutory supplementary proceedings. These rules do not, however, give to a judgment creditor any right to subject to the judgment the property of persons other than the judgment debtor, nor to require the disclosure of assets of persons other than the judgment debtor." p. 776.

More recent cases have not restricted the judgment creditor's scope of discovery so severely. In *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559 (S.D.N.Y. 1977), the United States District Court held that the rule banning disclosure concerning the assets of a non-party is not to be mechanically applied. "Discovery has been permitted against a non-party where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." (p. 562.) See also *Caisson Corporation v. County West Building Corp.,* 62 F.R.D. 331 (E.D. Pa. 1974); *Monticello Tobacco Co. v. American Tobacco Co.,* 12 F.R.D. 344 (S.D.N.Y.), *aff'd on other grounds* 197 F.2d 629 (2d Cir. 1952); and *Davis Acoustical Corp. v. Skulnik,* 131 N.J. Super. 87, 328 A.2d 633 (1974).

In *Davis Acoustical Corp. v. Skulnik,* the Superior Court of New Jersey, Appellate Division, held that:

"The grant or denial of a petition for discovery rests within the sound discretion of the trial judge. It is not necessary to present positive proof that the debtor has an interest in property held by a third person." p. 92.

In *Skulnik* a judgment creditor secured an ex parte order for discovery compelling the son of the judgment debtor to produce certain documents pertaining to a business which the son owned. Evidence was presented to the trial judge which tended to show that the judgment debtor had transferred his property to his son in an attempt to avoid paying the judgment. The court found that "sufficient information was furnished by the judgment creditor to raise a reasonable doubt of the ownership of the properties in question and to raise a sufficient possibility that the judgment debtor had interests in the properties." p. 92.

Originally, defendant in these actions took the position that he could not reveal his personal tax returns to plaintiffs as the returns

were joint with his wife and his wife would not consent. It is our understanding from statements made at oral argument that defendant has abandoned that argument and has made, or is willing to make, such returns available.

Appellant contends that in order to protect the interests of the third party non-litigants the court was under a duty to go through the records in an in camera inspection and sort out what plaintiffs' accountant could examine and what he could not. The court, in overruling the motion, stated:

"[T]here is basically nothing new in the argument presented at this time so far as the position of the defendant that was not previously presented to the Court on the Motion to Quash. The difference being that there is a proposal that the Court take the responsibility of examining whatever books and records that are involved and then making a predetermination of what the defendant should disclose. Mr. Fisher refers to practical problems, I see tremendous, virtually insurmountable practical problems even if the Court were under, or inclined to undertake such an inspection. It affirmatively appears to the Court that this would be simply shifting the defendant's responsibilities onto the shoulders of the Court. That there's basically nothing new before the Court at this time other than the proposal that the Court make the inspection, that the arguments of all have been presented to the Court previously regarding these interests of other people, and I see nothing new in it. The Court has held previously that it's the understanding of the Court that the proceedings in Aid of Execution require the judgment debtor to make good faith disclosure and the Court feels that it can only deny the motion; leave this responsibility on the defendant to make good faith disclosure. If he feels that he's done everything that's required of him then possibly the Court may have some other motion before it. But the Court's going to leave the defendant to solve his own problems. I will say so far as the matter of issuing a protective order to keep information from quote, "Prying Eyes and prevent its misuse," close quote. Mr. Etherington's past conduct in this case has discredited his credibility so far as the protection of others interests and the Court is not persuaded at this time on Mr. Etherington's presentation that the Court is obliged to enter any protective order to prevent misuse of the proceedings of Aid of Execution. So the motion is overruled and we're adjourned."

We have carefully examined the numerous authorities cited by appellant and have carefully considered his arguments. Considering the close family relationship existing between the defendant and the various principals in the corporations and the broad discretion vested in the trial court, we find no abuse of that discretion.

Defendant's second point on appeal is that the district court erred in finding defendant in contempt of court for failing to produce the subpoenaed records. Defendant basically argues that he should not have been found in contempt because he had

complied with the court order to the limits of his ability. It is well-settled that a party cannot be punished for contempt for failure to perform an act which is impossible or beyond his control. *Haberer v. Newman,* 219 Kan. 562, 566-567, 549 P.2d 975 (1976). See also *Traub v. United States,* 232 F.2d 43 (D.C. Cir. 1955), and *Oriel v. Russell,* 278 U.S. 358, 73 L.Ed. 419, 49 S.Ct. 173 (1929).

At the hearing on January 29, 1979, defendant testified that on January 2, 1979, he had been removed as president of G & K, Inc. and his wife named in his place. He testified that he had no control or access to the corporate records and no authority to produce them. Having produced his personal records and having testified that he owned no property, defendant contends he complied with the court's orders to the extent of his ability to do so. One of the fallacies in defendant's position is that on January 11, 1979, defendant filed his motion for an in camera inspection of the corporate records and on January 12, 1979, argued to the court in support of such motion and thereby conceded that he did, in fact, have access to such records. If defendant were able to produce the records for an in camera examination, he was equally able to produce them in compliance with the prior subpoena and court orders. In a contempt proceeding where the prior orders of the court have not been complied with, the burden is upon the contemner to produce sufficient evidence to show cause why he should not be held in contempt of court. This defendant failed to do. In its ruling the trial court stated:

"Now so far as contempt citation question, what is involved is the failure of Mr. Etherington to produce the subpoenaed books and records on the 15th of January, 1979; these were records that were subpoenaed in February of 1978. The Court does not know but that possibly Mr. Etherington may have, may be judgment proof but it's the Court's understanding that the Kansas law on proceedings in Aid of Execution require a judgment debtor to respond and in good faith make disclosure to judgment creditor as required. It is clear that there has been a most effective delay in making disclosure; nearly one year. Various grounds have been argued and presented, one of those being a claim that the records were not under the control of the defendant, that the interests of others would be unduly publicized. The Court has never been persuaded by these arguments at any time through these proceedings. The maneuvers and procedures followed by the defendant add up to the Court to be a pure subterfuge. And as the Court announced to counsel upon the hearing on the motion for the Court to examine records in camera, the Court announced that the defendant's position simply was without credibility. I don't want to say that in a derogatory sense; simply the Court does not feel that these records could not have been produced by Mr.

Etherington on February 8th, and the Court just simply does not feel that anyone else's interest would have been prejudiced by them.

"Upon this finding the defendant is in contempt and the Court so finds that he has failed to show cause why he should not be found in contempt."

Most of the cases which have come before this court involving contempt proceedings have arisen out of domestic problems between the litigants. The principles propounded in those cases regarding the powers and duties of the trial court apply equally to other contempt proceedings. In *Haynes v. Haynes,* 168 Kan. 219, 212 P.2d 312 (1949), we stated at page 226:

"It must be remembered that by the very nature of a contempt proceeding the decision of guilt or innocence of an accused rests in the sound discretion of the trial court before whom the matter is pending. . . . It must, likewise, be kept in mind that when a trial court has exercised that discretion and its decision has been challenged by appeal the sole duty of the appellate court is to determine whether the record reveals such an abuse of discretion as to warrant a reversal of its action."

We find no abuse of discretion.

Finally, appellant argues he should not have been found in contempt because the subpoena duces tecum was invalid as to all but personal records in that it was directed to the defendant individually and not as the appropriately named officer of the various family entities. This argument was not raised before, or presented to, the trial court and cannot be raised for the first time on appeal before this court. *Landrum v. Taylor,* 217 Kan. 113, 120, 535 P.2d 406 (1975).

The judgment is affirmed.