(809 P.2d 1245)

No. 65,647

BETTY JEAN W. DUBE, *Appellee*, v. RUSSELL ARTHUR DUBE, *Appellant.*

—

Opinion filed April 26, 1991.

*Frances A. Hartman,* of Cordry & Hartman Counsellors at Law, of Wichita, for appellant.

*Charles M. Cline,* of Wichita, for appellee.

Before PIERRON, P.J., BRAZIL and LARSON, JJ.

BRAZIL, J.: Russell Arthur Dube appeals the trial court's denial of his motion for relief from judgment pursuant to K.S.A. 60-260(b)(4). Specifically Dube claims the trial court impermissibly entered a judgment *sua sponte* on February 15, 1989, purporting to order arrearages for temporary support first awarded in 1981. We reverse.

Betty Jean W. Dube and Russell Arthur Dube were married on June 30, 1963. One child, Timothy Arthur Dube, was born on August 1, 1964. On October 16, 1981, Betty filed a petition for separate maintenance, and, on October 20, 1981, Betty obtained a temporary support order for her and for Timothy beginning November 1, 1981. In addition Russell was ordered to pay $500, in $125 monthly increments, for Betty's attorney fees.

The trial on the divorce action was conducted, and the final divorce decree was filed on March 7, 1984. (The record does not indicate how or when Betty changed her action from separate maintenance to divorce.) The final decree included a division of property, awarded no spousal maintenance, and specifically exempted Russell's retirement pay, stating: "No award of the husband's military retirement pay will be set aside to the plaintiff either as maintenance or as a division of marital property, the Court having made the finding that the plaintiff has adequate property with which to maintain herself." The decree did not award maintenance for either spouse or child support for Timothy, who had then reached the age of majority. Nor did the decree award judgment for unpaid temporary maintenance, child support, or Betty's attorney fees.

On March 16, 1984, Betty filed a motion for a new trial, claiming that the judgment was contrary to the evidence, that the journal entry of judgment and decree of divorce omitted the judgment in favor of plaintiff for support arrearage, that the court's finding that plaintiff had adequate property to maintain herself and no part of defendant's military retirement pay would be awarded as either maintenance or as a division of property was in error, and that the judgment awarded to plaintiff for her attorney fees was contrary to the evidence and therefore inade-

quate. According to the motion, hearing was set for March 20, 1984, at 8:45 a.m.

The record includes a motion docket minutes sheet for the motion for a new trial dated in the heading March 20, 1984. The notation on the sheet shows the motion was dismissed, ostensibly for nonappearance, and is signed by Judge Ken Kimmel and dated March 16, 1984. No appeal was taken from this dismissal.

Nothing further is recorded until June 23, 1986, when Betty filed a motion to reinstate the motion for a new trial, claiming her motion for a new trial was dismissed without notice and prior to the date set for hearing. Betty has not explained why she did not appeal from the dismissal since she must have known about it when she went to court on March 20, 1984, the scheduled date of the hearing.

On June 24, 1986, Russell filed a motion to quash the motion to reinstate the motion for a new trial and also filed a motion for attorney fees. On January 8, 1987, the court granted Russell's motion to quash but overruled Betty's motion to reinstate the motion for a new trial and Russell's motion for attorney fees.

On January 14, 1987, Judge Kimmel sent a letter to Betty's attorney informing him that, after hearing argument and reviewing the file and the law, the motion for the new trial and other relief was overruled. Again, no appeal was taken from this ruling.

On March 5, 1987, the court, upon Betty's oral application, entered an order nunc pro tunc adding the legal description for certain real estate that was part of the final divorce decree of March 7, 1984. The court also reiterated its finding that Russell's military retirement pay was not subject to any award as maintenance or a division of marital property.

On April 19, 1989, the trial court entered an order purporting to award support arrearage based on the temporary support order first granted on October 20, 1981, and which ended when the final divorce decree was filed on March 7, 1984. In its order the court stated that a hearing on the merits of the issue had not been conducted. This statement directly contradicts the court's order of January 8, 1987, overruling Betty's motion to reinstate her motion for a new trial as evidenced by the court's letter to counsel stating it had considered the merits (this included Betty's plea for arrearages) and was overruling the motion.

By this action, in 1989, the court opened the door for Betty to file a motion to revive a judgment and begin garnishing Russell's military retirement pay. In so doing, all the parties and the court accepted that the temporary support order was a final judgment capable of being revived. This is not the law.

Temporary alimony or support is also referred to as alimony *pendente lite*, interim alimony, or interlocutory alimony and "is an allowance by the court for the maintenance of a spouse during pendency of a matrimonial action." 24 Am. Jur. 2d, Divorce and Separation § 558. "K.S.A. § 60-1607(c) allows a court to award maintenance *pendente lite. . . .* An award of temporary maintenance lies within the discretion of the court. The amount is subject to modification as the circumstances change. In any event, the temporary maintenance ceases when the divorce action terminates." 1 Elrod, Kansas Family Law Handbook § 10.064, p. 10-39 (rev. ed. 1990).

In *Edwards v. Edwards,* 182 Kan. 737, Syl. ¶ 1, 324 P.2d 150 (1958), the court said: "An allowance of support . . . *pendente lite . . .* does not become a final judgment on which execution can issue, but is merely a temporary or *ad interim* provision for their support until the final determination of the action." Further, the court said:

> "An order for support, such as [this] . . . , is interlocutory in character, and, like other interlocutory orders made during litigation, remains solely in the sound judicial discretion of the court . . . and may be modified as varying circumstances justify during the pendency of the action in any form in the district court, even to the extent of discharging accrued and unpaid installments." 182 Kan. 737, Syl. ¶ 2.

It is clear that in Kansas past due installments of permanent alimony and permanent child support "become a vested right and become final judgments, and may be collected as other judgments . . . in this state." *Ediger v. Ediger,* 206 Kan. 447, 455, 479 P.2d 823 (1971). When addressing the issue of past due installments of temporary support, however, the court in *Edwards* said: "[T]he rule that past-due installments for child support [or permanent alimony] ordered paid by the final decree become final judgments as of the dates due and may be collected in the same manner as other judgments, is clearly inapplicable to past-

due installments of support allowed *pendente lite*." 182 Kan. at 744. Further, the court said:

"[A]n order allowing temporary alimony is not in the nature of a final judgment on which execution can issue, nor is it a decree in equity for the payment of money. [Citations omitted.] No vested rights are acquired in the amount allowed. [Citation omitted.] Like other interlocutory orders, an order for support money *pendente lite* . . . remains solely in the sound judicial discretion of the court which made it [citations omitted], and may be modified as varying circumstances justify during the time the action is pending in any form in the district court, even to the extent of discharging accrued and unpaid installments. [Citations omitted.]

"[T]he past due installments . . . did not become final judgments . . . which could be collected by execution. . . . [T]hose installments, when due, were subject to enforcement by attachment . . . or by contempt proceedings." 182 Kan. at 744-45.

Under the holding of *Edwards* and the authorities which recognize that temporary support ceases to exist when the divorce action terminates, Betty cannot now attempt to revive a judgment which was not a final judgment. Likewise, the trial court could not, five years after the final divorce decree and on its own motion, attempt to revive an interlocutory support award.

Betty's motion for a new trial was timely filed but dismissed. That dismissal was never appealed. Two years later, Betty filed a motion to reinstate the motion for a new trial. Such a motion was clearly out of time. The trial court, however, acted on that motion and overruled it. Again, Betty did not appeal. Two years later, the trial court, without a motion from either party, entered an order contradicting its overruling of Betty's untimely motion to reinstate and awarded arrearages. This prompted Betty's motion for revivor on the judgment and the subsequent court order reviving the same.

By filing the revivor action, it appears Betty was relying on the temporary support order as a final judgment. *Edwards* dispels that argument. If, however, Betty is claiming that the February 15, 1989, order, which was filed April 19, 1989, was the judgment giving her the right to support arrearages, there was no need for a revivor action because that judgment was not dormant.

There is no doubt the divorce decree filed March 7, 1984, was a final order. It is also without question that no permanent support was awarded to Betty nor was any child support awarded

(the one child of the marriage had reached majority). Likewise, the court did not continue the temporary support. "[A] temporary alimony award pending the final judgment in the lower court is merged in the judgment and does not continue after the judgment." *Rankin v. Rankin*, 275 So. 2d 283, 284 (Fla. Dist. App. 1973). Unlike cases where property division is not settled or alimony or child support is left open for the court's final order or modification, this case left nothing open for decision.

The trial court had no authority to hear the motion to reinstate the motion for a new trial, which Betty filed two years after the fact. The court, however, did hear that motion, first overruled it, and then two additional years later purported to revive part of it with the April 19, 1989, order. Except for the nunc pro tunc order of March 5, 1987, every action the trial court took subsequent to the 30 days allotted for Betty to appeal the dismissal of her motion for a new trial was untimely and of no effect.

Reversed.