(907 P.2d 909)
No. 74,711
No. 74,712

JOHN KROGEN, *Appellant*, v. PATRICK W. COLLINS, Sheriff of Cherokee County, Kansas, and HONORABLE CHARLES J. SELL, District Court Judge, *Appellees*.

Opinion filed December 8, 1995.

*Alois R. Bieber*, of Columbus, for the appellant.

*Steven W. Wilhoft*, of Law Office of Richard G. Tucker, of Parsons, and *Kevin Case*, deputy attorney general, for the appellees.

Before PIERRON, P.J., GERNON and ROYSE, JJ.

PIERRON, J.: John Krogen has filed an original habeas corpus action with the Court of Appeals and appeals the district court's civil contempt order stemming from a divorce action.

This court does not exercise original jurisdiction in habeas cases where relief is available in district court. See Supreme Court Rule 9.01(a) (1994 Kan. Ct. R. Annot. 51). Krogen filed a habeas petition in the district court, from whose ruling he now appeals, before filing this original action. We now entertain the appeal and dismiss the original action with this court.

On August 25, 1993, Teresa Krogen petitioned the district court for divorce from John and for division of property. Judge David F. Brewster signed various orders in the action. On March 18, 1994, Judge Charles J. Sell signed an order restraining John from encumbering, spending, or otherwise disposing of the $212,699.75 cash settlement that he received from a civil suit in California. The order stated that it was to be enforced "only until the trial of this action or until modified by the court." The order warned John that any violation of the order could subject him to a contempt action. On July 6, 1994, Judge Brewster signed an order formally assigning the case to Judge Sell.

Teresa testified John had bragged to her that he had settled his suit and would invest the money to avoid dividing it with her in the divorce action. He told her he would keep the money in California and his father would "divvy it out" to him as needed. John testified he wrote a check to his father for $106,000 out of the settlement. He stated he did not owe his father any money but had agreed to give him half of the settlement for helping him with the lawsuit. John made some type of deposits in the names of his three children for $10,000 apiece. He testified as to the disposition of a total of $179,962 of the settlement. He claimed he had spent the unaccounted-for balance.

John claimed he had disposed of all of the settlement before the restraining order was entered. Carol Page lived with John from January 1994 until his arrest in 1995 for contempt. She testified that he went to California in July or August 1994, months after the restraining order was entered, to complete a business deal with his father stemming from the settlement. She stated she regularly saw $10 and $20 bills in John's home after his unemployment benefits ran out. Sometime after his divorce from Teresa, John bought Page two vehicles. John B. Krogen, John's son, testified that he found

between $2,000 and $3,000 in cash in a file cabinet in John's home during the summer of 1994. During that summer John bought his children clothes and toys and paid for a motel and meals for himself and his children. At Christmas 1994, he gave the children $50 gift certificates and other presents. The Cherokee County Sheriff seized $1,600 from John's apartment on February 14, 1995.

The district court found John in civil contempt for concealing, disbursing, and disposing of the settlement in violation of the district court's restraining order and ordered him to purge the contempt by depositing $106,349.87 with the clerk of the court.

John argues, without citing legal authority, that Judge Sell lacked authority to issue the order restraining him from alienating the settlement. He bases this argument on the facts that the case was not formally assigned to Judge Sell until months after he issued the restraining order, and the restraining order does not recite that Judge Brewster was absent from the jurisdiction. Resolution of this issue requires construing the statutes governing the authority of district court judges. "Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

Judge Sell is a judge in the Eleventh Judicial District. The Eleventh Judicial District includes Cherokee County, and judges for this district are authorized to hold court in, among other cities, the city of Columbus. K.S.A. 4-212. A district judge has full judicial power and authority of a district court. K.S.A. 20-302. A district judge in a judicial district having more than one district judge has all the authority throughout the district as if each judge were the sole judge of the district. K.S.A. 20-330. The Supreme Court designates an administrative judge to control the assignment of cases within each district. K.S.A. 20-329. These statutes indicate that, with or without a formal written assignment by the administrative judge, any district judge has authority to issue an order in any case in the judge's assigned district unless such action would contravene the administrative judge's supervisory authority. The statutes do not require any formal writing or any indication that another judge is unavailable prior to a district court judge assuming authority over

a case. The statutes merely prohibit the district judges from contravening the supervisory authority of the administrative judge of their district. John's petition does not allege, and the record does not suggest, that Judge Sell contravened the administrative judge's supervisory authority by issuing the restraining order.

The main issue on appeal is whether the trial court erred in holding John in contempt for violating the restraining order. We find it did not, under our scope of review.

"Civil contempt is the failure to do something ordered by the court for the benefit or advantage of another party to the proceeding." *Edmiston v. First Nat'l Bank of Holcomb*, 242 Kan. 13, 15, 744 P.2d 829 (1987). Criminal contempt, by contrast, is "conduct directed against the dignity and authority of a court or a judge acting judicially, with punitive judgment to be imposed in vindication; its essence is that the conduct obstructs or tends to obstruct the administration of justice." *In re Sanborn*, 208 Kan. 4, Syl. ¶ 2, 490 P.2d 598 (1971). The district court held John in civil contempt for violating the restraining order by concealing, disbursing, and disposing of the settlement.

John contends the record does not support the trial court's determination that he violated the restraining order. We believe it does.

Whether John disposed of or concealed the settlement before or after the district court issued the restraining order is an issue of fact. A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. *City of Council Grove v. Ossmann*, 219 Kan. 120, Syl. ¶ 2, 546 P.2d 1399 (1976).

The district court found the evidence that John concealed or disposed of the settlement after the restraining order was more credible than John's claim that he did so before the order was entered. An appellate court may not reweigh the testimony or pass on the credibility of witnesses. *McKissick v. Frye*, 255 Kan. 566, Syl. ¶ 8, 876 P.2d 1371 (1994). The district court did not err in finding that John disposed of or concealed the settlement after the district court issued the restraining order.

John also argues that the contempt order is invalid because the underlying restraining order merged with and became unenforce-

able upon the filing of the division of property order. We disagree. He relies on *Dube v. Dube,* 15 Kan. App. 2d 511, 515-16, 809 P.2d 1245, *rev. denied* 249 Kan. 775 (1991), where the court held that an order for temporary alimony during a divorce action merged into and did not continue beyond the final judgment that contained no award of alimony. Unlike arrearages of alimony in a final order, arrearages in temporary alimony do not become judgments when due. *Edwards v. Edwards,* 182 Kan. 737, 744, 324 P.2d 150 (1958). The court ordering temporary alimony retains the discretion to discharge accrued arrearages on the temporary order. 182 Kan. at 745. Hence, a final order containing no award of alimony impliedly discharges accrued arrearages on temporary alimony. See *Dube,* 15 Kan. App. 2d at 515-16.

By contrast, the final order awarding Teresa half of the settlement was the manifestation of rather than the discharge of her rights protected by the restraining order. Had the district court not awarded Teresa any of the settlement in the final division of property order, John's reliance on *Dube* might have some merit regarding a civil contempt order designed to enforce Teresa's rights. John disregarded the restraining order at his own peril, and the district court's division of property order and contempt order are the culmination of his disregard.

Finally, John argues that he established that he cannot possibly comply with the civil contempt order, so the order is invalid. Again, we disagree.

He argues that the district court's contempt order is invalid because the record does not contain substantial competent evidence of his ability to comply with the order. John states this issue should be reviewed de novo on appeal. Although impossibility of compliance invalidates a civil contempt order, John's argument fails to consider his burden of proof and misconstrues the standard of appellate review of a trial court's contempt order.

Civil contempt is a remedial or corrective action meant to coerce a party into action; the party in contempt can be confined until the party performs the court-ordered action. *Goetz v. Goetz,* 181 Kan. 128, 137, 309 P.2d 655 (1957). Whether to hold someone in contempt rests in the sound discretion of the trial court. Its decision

to hold someone in contempt will be disturbed on appeal only upon a showing of an abuse of discretion. *Fleming v. Etherington*, 227 Kan. 795, Syl. ¶ 6, 610 P.2d 592 (1980). In a civil contempt proceeding, the alleged contemnor may assert a present inability to comply with the order in question; where compliance would be impossible, the court cannot proceed with a civil contempt action. *United States v. Rylander*, 460 U.S. 752, 757, 75 L. Ed. 2d 521, 103 S. Ct. 1548 (1983). The alleged contemnor, however, has the burden of production to show that compliance would be impossible. *Rylander*, 460 U.S. at 757.

In the context of this case, the issue is whether the trial court abused its discretion in holding that John had not permanently disposed of the settlement and could still deposit Teresa's court-ordered share with the district court. Again, this boils down to an issue of credibility. The court properly exercised its discretion to conclude that John's alleged gifts of money to his father and children out of the settlement, and his claim he had spent the unaccounted-for balance, were a ruse designed to prevent Teresa from receiving her court-ordered share of the settlement. See *Maggio v. Zeitz*, 333 U.S. 56, 75-76, 92 L. Ed. 476, 68 S. Ct. 401 (1948) (an accused contemnor's own denial of possession which the trial court finds incredible does not sufficiently evidence an inability to comply with an order to turn over property to the trial court).

We therefore find that there is substantial competent evidence in the record to support the trial court's finding that John was in contempt of the court's orders and that he has the means to purge himself of contempt and regain his freedom.

Affirmed.