NOT DESIGNATED FOR PUBLICATION

No. 123,233

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

KENNETH M. CLARK,
*Appellee*,

and

NANCY BLUM CLARK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed March 25, 2022. Reversed and remanded with directions.

*M. Kathryn Webb*, of Law Office of M. Kathryn Webb, LLC, of Wichita, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

PER CURIAM: For reasons that remain mysterious, this divorce action languished mostly unattended in the Sedgwick County District Court for well over a decade. As a result, temporary orders continued in place, and the district court ultimately divided the parties' assets and liabilities some 17 years after the petition had been filed. Nancy Blum Clark, the ex-wife of Kenneth M. Clark, has appealed. Because the district court made substantive legal mistakes and short-circuited the hearing process in arriving at the property division, we reverse that order and remand for further proceedings. We do so

1

with some regret, given the extraordinary lifespan of this case. But a district court's understandable alacrity in closing out protracted litigation cannot excuse material errors undercutting the legal propriety of the result.

FACTUAL AND PROCEDURAL HISTORY

Kenneth, who has been licensed to practice law in Kansas for 40 years, filed a divorce petition in January 2002 and obtained an order requiring him to pay $1,247 a month in temporary child support and $1,600 a month in temporary maintenance. The order gave Nancy primary physical custody of the couple's five children and possession of the family residence, along with the obligation to pay the mortgage. At Kenneth's request, the district court entered a decree of divorce dissolving the marriage later in 2002 but reserved rulings on permanent support and maintenance and the division of the couple's assets and liabilities. Nancy did not hire a lawyer to represent her until 2015.

Nothing of substance happened between the filing of the divorce decree and Nancy's lawyer entering the case. Several years after the divorce decree was filed, Nancy wrote to the district court inquiring about the status of the proceedings. A district court judge apparently held an informal meeting with Kenneth and Nancy after receiving the letter, but the case did not progress.

The record on appeal shows that Kenneth never paid temporary child support or temporary maintenance and instead made the mortgage payments on the family home and covered other expenses. Kenneth has described the switch as an "agreement" with Nancy. She has disputed that characterization and contends she neither so agreed nor intended to relieve Kenneth of his obligation to pay temporary support and maintenance. During the time the case lay fallow in the district court, the children became adults, effectively reducing the temporary support as each turned 18 years old.

2

Nancy's lawyer pressed for payment of the accrued and unpaid temporary support and temporary maintenance. The parties exchanged documents, including information about what expenses Kenneth asserted he had paid. Some of those materials were produced on the eve of a nonevidentiary hearing in the district court, and Nancy unsuccessfully objected to their consideration. The district court also turned aside Nancy's request for an evidentiary hearing to address, among other things, the circumstances surrounding the purported agreement related to Kenneth's payment of the mortgage in place of the temporary support and maintenance.

The district court entered what it termed a memorandum and preliminary orders in June 2019 and a final journal entry in June 2020. The upshot was the district court found Kenneth had no present liability for the unpaid temporary maintenance and was entitled to a setoff against the unpaid temporary child support for the mortgage payments he had made. The district court concluded Kenneth had no unsatisfied financial obligation to Nancy. The district court divided the net proceeds from the December 2018 sale of the family residence—the only remaining marital asset—with just over $103,000 going to Nancy and just under $69,000 going to Kenneth. Nancy has appealed those rulings. The district court also ordered that Kenneth and Nancy should retain the personal property each had in their possession and would be responsible for various personal debts. Those rulings have not been disputed on appeal.

LEGAL ANALYSIS

Broadly, a district court acts with judicial discretion in allocating marital property and otherwise settling a divorcing couple's financial affairs, including matters of child support and maintenance. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002); *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 715, 229 P.3d 1187 (2010). The allocation should be "equitable" and "just." See K.S.A. 2020 Supp. 23-2711(a)(2) (final decree to include order for "equitable division of . . . property"); K.S.A. 2020 Supp.

23-2802(c) (court "to make a just and reasonable division of property"). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan 873, 893, 424 P.3d 515 (2018); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

We find the district court made a substantial error deviating from the governing legal framework in concluding the unpaid temporary maintenance Kenneth had been ordered to pay Nancy was subject to the dormancy and discharge rules for judgments. In turn, the district court mistakenly disregarded that obligation in fashioning an equitable allocation of marital property. That mistake alone substantially eroded the legal and factual foundations for the district court's final order. As a result, the final order amounts to an abuse of discretion—a conclusion requiring us to reverse and remand for further proceedings.

We have concerns about the legal underpinnings of other aspects of the final disposition of the parties' assets and liabilities and about the lack of an evidentiary hearing. To provide some guidance to the parties and the district court on remand, we outline what we see as difficulties in how the case was wrapped up.

• The district court ruled that the monthly temporary maintenance payments Kenneth was ordered to pay Nancy became dormant and then unenforceable under K.S.A. 2020 Supp. 60-2403(a)(1) because she took no steps to collect or otherwise preserve those delinquencies. The ruling wiped out any obligation Kenneth had for unpaid temporary maintenance. The district court erred. The statutory dormancy and cancellation provisions apply to final money judgments. The payments Kenneth owed Nancy were temporary—they continued until modified or until a final judgment settling the couple's property rights and fixing permanent maintenance (if any) was entered—and,

4

as such, they were interlocutory. K.S.A. 2020 Supp. 23-2707(a)(3); see 2 Elrod, Kansas Law and Practice:  Family Law § 10.25 (2022).

The statutory language of K.S.A. 2020 Supp. 23-2707(a)(3) clearly differentiates temporary maintenance orders from permanent maintenance included in a final decree under K.S.A. 2020 Supp. 23-2711(a)(3). Periodic permanent maintenance payments become judgments after they are delinquent; unpaid temporary maintenance payments do not. *Krogen v. Collins*, 21 Kan. App. 2d 723, 727, 907 P.2d 909 (1995); 2 Elrod, Kansas Law and Practice:  Family Law § 10.25 (2022). In turn, a divorcing spouse's obligation for temporary maintenance does not become dormant or dischargeable under K.S.A. 2020 Supp. 60-2403(a)(1).

To the extent the district court relied on dormancy of final judgments as a partial or alternative ground for adjusting Kenneth's obligation for unpaid temporary child support, it likewise erred. See *Dube v. Dube*, 15 Kan. App. 2d 511, 514-15, 809 P.2d 1245 (1991).

As a corollary, we mention that Kenneth submitted an expert report on his potential liability for unpaid temporary maintenance and support that capped the maintenance at 121 months. We do not understand the report's author to be providing a legal opinion—he is identified as an economist and not a lawyer. Rather, he appeared to use the cap as an assumption given him to calculate interest on the delinquencies. We separately address interest momentarily. By statute, *permanent* maintenance payments generally are limited to 121 months, although district courts often order shorter periods and may, in some circumstances, extend the payments beyond 121 months. K.S.A. 2020 Supp. 23-2904. The limitation appears in article 29 of Chapter 23 governing maintenance in final decrees. K.S.A. 2020 Supp. 23-2902 (referring to K.S.A. 23-2711 that outlines content of final decree). There is no comparable limitation on temporary support and maintenance orders in K.S.A. 2020 Supp. 23-2707.

5

In sum, the district court erred in categorically discarding the delinquent temporary maintenance payments Kenneth had been ordered to make to Nancy at the outset of the divorce action. And those payments are not subject to the 121-month limitation in K.S.A. 2020 Supp. 23-2904.

• The district court approached the unpaid temporary child support from a couple of directions. First, the district court concluded there must have been some sort of agreement between Kenneth and Nancy that his payment of the mortgage constituted a substitute for the support. The district court relied heavily on the passage of time and the absence of any formal objection from Nancy to Kenneth personally or in papers submitted in the divorce action until 2015. But the district court declined to hold an evidentiary hearing to explore the contours of any purported agreement, despite Nancy's request. And that's a problem.

The record evidence not surprisingly shows Nancy was aware Kenneth made the monthly mortgage payments on the home they owned—where she and the children continued to live after he filed for divorce—but did not pay the temporary maintenance and support the district court had ordered. We suppose, too, Nancy knew she had been ordered to pay the mortgage. Although Nancy may have acquiesced in the switch by not formally objecting in some fashion, the fragmentary record evidence at the very least suggests the absence of an actual agreement. The district court could not have fairly concluded Nancy accepted the mortgage payments as a complete substitute for the maintenance and support, meaning she had waived her right to pursue any delinquency. While we appreciate the district court's stated concern about memories faded with the passage of years and possibly shaded by self-interest, those potential limitations did not relieve the district court of the obligation to hear testimony and receive other evidence Nancy wished to present in support of her effort to recover the unpaid temporary maintenance and support.

On remand, the district court should hold an evidentiary hearing to determine if the parties had an agreement about Kenneth substituting mortgage payments for his obligation to pay temporary maintenance and support and, if so, the scope of the agreement. The parties, of course, remain free to stipulate to either specific facts or the nature of any agreement, thereby curtailing the hearing or (perhaps) dispensing with it.

The district court's approach also suffers from a legal error regarding the child support. A divorcing husband and wife cannot agree between themselves to reduce or eliminate with court-ordered child support. The support entails a legal obligation due the child, and the district court must direct any change in payment, consistent with the child's interests. See *In re Marriage of Schoby*, 269 Kan. 114, Syl. ¶ 1, 4 P.3d 604 (2000); *In re Marriage of Moler*, No. 119,113, 2019 WL 3367994, at *8 (Kan. App. 2019) (unpublished opinion). Although *Schoby* and *Moler* concerned permanent child support, the rule and the reasoning behind the rule are equally applicable to temporary support. So the district court could not have given legal effect to any purported agreement Kenneth and Nancy struck to substitute the mortgage payments for the temporary child support.

Invoking the equitable doctrine of setoff, the district court credited Kenneth's mortgage payments against the unpaid temporary support and concluded he had no remaining obligation. Setoff permits a district court to apply A's established debt or money judgment owed B to reduce B's separate debt or judgment owed A. In effect, the smaller obligation is treated as a credit against the larger without an exchange of money between the parties. Setoff is entirely discretionary; a district court need not adjust parties' mutual indebtedness that way. *Mynatt v. Collis*, 274 Kan. 869, 881, 57 P.3d 513 (2002). The doctrine may be applied to interlocking financial obligations of divorcing spouses, including delinquencies in maintenance or support payments. See *In re Henson*, 58 Kan. App. 2d 167, 184, 464 P.3d 963, *rev. denied* 312 Kan. 892 (2020) (recognizing setoff may be applicable to disputed arrearage in child support); see 24A Am. Jur. 2d, Divorce and Separation § 932.

The district court, therefore, had the authority to consider setoff here, especially since the offsetting obligations—the mortgage payments for Nancy and the support and maintenance payments for Kenneth—were imposed in the temporary order entered at the outset of the divorce action. Based on documents Kenneth submitted, the district court concluded he had made about $339,693 in mortgage payments after the divorce action had been filed and credited that amount against the unpaid temporary support. That amount exceeded what the parties presumed any delinquency would have been. In addition to arguing setoff should not apply, Nancy contends Kenneth should not get credit for the mortgage payments he made after she moved out of the marital residence. One of the children apparently lived there for a time after becoming an adult, and the house may have been vacant for some period, although the record isn't immediately clear. In any event, Nancy's argument is misplaced because the mortgage payments increased the equity in the house, and the equity was a marital asset that accrued to her benefit.

Because we are substantially reconfiguring how those obligations should be treated on remand, the district court may, likewise, reexamine its exercise of discretionary authority to order a setoff. To be clear, we merely suggest the issue may be revisited; we offer no opinion on weighing the equities for and against setoff.

• The parties have presumed interest accrued on the unpaid temporary maintenance and support. Kenneth's expert assumed interest on those amounts should be computed using the fluctuating annual rate for judgments set out in K.S.A. 16-204(e)(1). The parties did not question that assumption, and the district court did not directly address interest because it ultimately found no delinquencies. We raised the matter of interest during oral argument and invited the parties to provide supplemental written submissions if they wished. Nancy has done so.

Consistent with our discussion of the district court's error in applying dormancy to the delinquent maintenance payments because they are not judgments, we fail to see how

8

they can be subject to statutory provisions governing interest on judgments. If they are not judgments that go dormant, it is hard to make a reasoned argument they are judgments that accrue interest under K.S.A. 16-204(e). Even if they were, the controlling subsection likely would be K.S.A. 16-204(e)(3) that regulates interest on "judgments . . . arising from a person's duty to support another person" by imposing a presumptive 10 percent annual rate unless a party can show a different rate should apply. The subsection suggests divorcing parties could agree to some other "reasonable interest rate" with district court approval.

In her supplemental submission, Nancy suggests K.S.A. 16-201 applies. But K.S.A. 16-201 governs interest due creditors or on an account when the parties have not agreed upon a rate of interest and for employees for money due from their employers. By its terms, the statute doesn't seem to govern temporary support or maintenance. Nancy cites no cases in which it has been applied to those sorts of obligations, whether temporary or permanent. We are disinclined to take that step, given the more particularized provision for interest on amounts due on legal duties of support found in K.S.A. 16-204(e)(3). See *Merryfield v. Sullivan*, 301 Kan. 397, 398, 343 P.3d 515 (2015) (absent compelling indicators otherwise, specific statute controls over general statute); see also *In re Marriage of Lee-Guiher-White*, No. 102,167, 2010 WL 1253716, at *3 (Kan. App. 2010) (unpublished opinion) (applying K.S.A. 16-204[e][3] to delinquent permanent maintenance payments that had become judgments and declining to consider prejudgment interest under K.S.A. 16-201).

If on remand Kenneth remains responsible for delinquent temporary support or maintenance, the parties and the district court should consider whether interest may be appropriately added to the delinquency. Our discussion should guide rather than control that consideration. We have not independently explored the issue in detail, especially in the absence of full briefing from the parties. There may be statutory or common-law

9

sources arguably entitling Nancy to interest that we have overlooked. To be clear, we are not offering the final word on the subject.

• The district court divided the equity from the sale of the marital residence between Kenneth and Nancy as their sole remaining asset. Nancy has challenged that division. A district court should marshal the divorcing parties' assets and liabilities and make "an equitable division" of their property. K.S.A. 2020 Supp. 23-2711(a)(2). An array of statutory factors guides the division, including an award of maintenance to one spouse. K.S.A. 2020 Supp. 23-2802(c)(7). As we have explained, we review a district court's allocation of marital property for abuse of judicial discretion. *In re Marriage of Wherrell*, 274 Kan. at 986.

Here, the district court deviated from the governing legal rules when it relied on dormancy to erase Kenneth's obligation for temporary maintenance. And the district court arguably relied on unproven facts in assessing whether Kenneth and Nancy had some "agreement" about who was to pay what in contravention of the temporary order. The significance of those determinations in this case necessarily calls into question the district court's ultimate conclusions under an abuse of discretion standard.

We have directed the district court both to determine whether the parties had some agreement about Kenneth's forbearance in paying temporary maintenance and support and to reconsider his liability for the unpaid amounts. Given the myriad possible results of that endeavor, the district court should again look at the allocation of the proceeds from the sale of the marital residence to insure "an equitable division" consistent with K.S.A. 2020 Supp. 23-2711(a)(2). We are not suggesting the division necessarily should be different—only that the district court ought to double-check its conclusion.

• Nancy has relied on *In re Marriage of Brown*, 295 Kan. 966, Syl., 291 P.3d 55 (2012), for the proposition the district court lacked the authority to modify or set aside the

orders for temporary maintenance and support and, thus, to wipe out Kenneth's delinquencies. Given the statutory changes to K.S.A. 23-2707, governing temporary orders, made after *Brown*, we are unpersuaded the decision aids Nancy's cause.

To be sure, *Brown* held that under the predecessor to K.S.A. 23-2707, a district court could not simply modify or retroactively terminate temporary orders for child support to excuse or void one spouse's arrearage for failing to pay as required. 295 Kan. at 976-77. The court specifically construed K.S.A. 60-1610(a)(1), covering support of minor children. We suppose the court's rationale would have extended to spousal maintenance covered in K.S.A. 60-1610(b)(2), given the comparable language in that subsection. We do not wade into the detailed historical review of the applicable statutes and their judicial construction set out in *Brown*.

In 2011, the Legislature transferred the statutes governing divorce from Chapter 60 to Chapter 23 and reconfigured some of them. In doing so, the Legislature adopted K.S.A. 2011 Supp. 23-2707 to govern interlocutory orders, including those for temporary maintenance and support. As enacted in 2011, K.S.A. 23-2707(a) provided that after a divorce petition had been filed, the district court could "make and enforce by attachment" interlocutory orders for, among other things, spousal maintenance and child support until a final judgment was entered. K.S.A. 2011 Supp. 23-2707(a). The language, by negative implication, preserved the rule in *Brown* precluding a district court from vacating or otherwise altering those temporary orders to eliminate any arrearages. But in 2014, the Legislature amended K.S.A. 23-2707(a) to provide that a district court may "make, modify, vacate, and enforce by attachment" those temporary orders. L. 2014, ch. 116, § 6. The expansion of a district court's authority to "modify" and "vacate" temporary orders before entry of a final judgment essentially amounted to a legislative overruling of *Brown*. The relevant statutory language has not changed since then.

11

Nancy did not take any action in the district court to enforce the temporary orders until 2015. Accordingly, the amended version of K.S.A. 2020 Supp. 23-2707(a) applies. Typically, amended statutes that are procedural or remedial apply to pending cases. See *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 460-62, 264 P.3d 102 (2011) (remedial legislation); *Dester v. Dester*, 50 Kan. App. 2d 914, 918-20, 335 P.3d 119 (2014). Here, the 2014 amendment of K.S.A. 23-2707(a) may not have been purely procedural, but it was plainly remedial. The change overruled *Brown* and afforded district courts expanded authority to fashion equitable orders addressing divorcing parties' assets, liabilities, comparative earning capacity and other factors in allocating their financial resources during and following the judicial termination of their marriage. District courts now exercise a broad—almost unfettered—right to adjust temporary orders and the amounts due under them during a divorce proceeding to maintain a fair and equitable financial balance. So, for example, a district court has the authority to reduce or eliminate temporary maintenance if the recipient experiences a sharp and unexpected increase in income or wealth during the divorce.

It's not apparent that Nancy had a vested right in the temporary orders or the arrearage in support or maintenance, especially absent an ongoing legal effort to collect the delinquencies. Moreover, even under *Brown* and the earlier version of K.S.A. 23-2707, a district court could set the amount of permanent maintenance or divide property in the final judgment to account for delinquencies in paying under temporary orders. See *In re Marriage of Colgan*, No. 109,430, 2014 WL 4080072, at *4 (Kan. App. 2014) (unpublished opinion) (recognizing authority of district court to "merge" temporary maintenance into permanent maintenance awarded in final judgment); *Waller v. Waller*, No. 108,151, 2013 WL 2991299, at *6 (Kan. App. 2013) (unpublished opinion) (rather than reduce arrearage in temporary maintenance by granting credit for mortgage payments made, district court granted credit against permanent maintenance, effectively reducing overall amount of maintenance). That could be done by giving the party owed temporary maintenance more, effectively making up for the delinquency, or by giving

12

that party the same or less than he or she otherwise would have gotten, effectively voiding the delinquency.

Although we can reasonably assume the Legislature did not contemplate temporary orders for maintenance and support remaining in effect for upward of a decade and a half in divorce action, the expansive authority outlined in K.S.A. 2020 Supp. 23-2707(a) affords district courts the ability to equitably address unusual circumstances arising in particular and peculiar cases. That is in keeping with the overarching principle directing district courts to adjust the divorcing parties' financial affairs in a fundamentally fair and equitable manner. See *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480-81, 193 P.3d 504 (2008); *In re Marriage of Peffly and McClanahan*, No. 118,736, 2019 WL 2399474, at *5 (Kan. App. 2019) (unpublished opinion); see also 2 Elrod, Kansas Law and Practice: Family Law § 10:3 (2022). We do not nor have we intended to suggest what ultimately may be fair and equitable here on a fully developed record examined in light of the applicable law. But the district court wields an exceptionally flexible judicial prerogative under K.S.A. 2020 Supp. 23-2707 in fashioning an appropriate outcome in this decidedly unusual case.

Reversed and remanded with directions.