Paul J. Morrison, District Attorney 10th Judicial District Johnson County Courthouse, P.O. Box 728 Olathe, Kansas 66051
Dear Mr. Morrison:
As District Attorney for the Tenth Judicial District, you request our opinion on the issue of dissemination of inmate "custody time." You question whether such information is covered under the Criminal History Record Information Act[1] and you pose the following questions:
 Who should have access to custody time (e.g. courts, defendant, defense attorneys, bonding companies, etc.)? Is custody time considered to be public record information?
 Is custody time considered to be criminal history, pursuant to the Criminal History Record Information Act (CHRI), and/or when does it become criminal history?
 Should custody time be disseminated verbally or in written form?
 If the District Court is given access to on-line retrieval of the Sheriff's custody time records (database), may court employees disseminate the information, without restriction, to any inquiring and/or requesting party?
 Would an Internet website, managed by the Sheriff, with unrestricted public access to custody time, violate any (federal or state) criminal history records acts?
 What liability issues could the Sheriff be exposed to, based on omissions or inaccurate information in their custody time record (database)?
Most of the questions you ask appear to center around three main issues: (1) Whether "custody time" is a reportable event or otherwise covered under K.S.A. 22-4701 et seq.; (2) what form records containing that type of information must take or be provided in (and to whom); and (3) whether all records containing such custody time information are public records subject to the Kansas Open Records Act (KORA).[2]
We start first with the KORA issues because that Act provides the basic framework for answering most questions concerning public records possessed by a county or its officials.
The KORA applies to all "public records" possessed by a "public agency."[3] A county sheriff's office qualifies as a public agency subject to the KORA. The KORA defines a public record as "any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency."[4]
Public records are presumed open to any requestor.[5] However, records not yet in existence are not subject to the KORA nor does the KORA impose a duty to create a record in order to respond to a request for information.[6]
The KORA applies to any existing public record which is made, maintained, kept by or in the possession of a county sheriff, even if the record is in computerized format.[7] "Custody time" is information,i.e. how many days (or hours) an individual has been in custody. This information is only considered a public record subject to the KORA when and if it has been recorded, i.e. reduced to written data or a photograph.[8] If no document has been compiled or created, the KORA does not require that such a task be undertaken.[9] However, if an existing public record is possessed by the County Sheriff, that office must provide access or copies of existing public records to anyone requesting such records,[10] unless a specific law allows or requires closure of that record or information.
K.S.A. 2001 Supp. 45-221 lists the types of public records that may be closed. Subsection (a)(1) includes an exception to disclosure, based upon laws outside the KORA itself.[11] The Kansas Criminal History Record Information Act ("CHRI"),[12] specifically K.S.A. 2001 Supp. 22-4707, clearly mandates closure of certain types of records:
"(a) A criminal justice agency and the central repository may not disseminate criminal history record information except in strict accordance with laws including applicable rules and regulations adopted pursuant to this act. A criminal justice agency may not request such information from the central repository or another criminal justice agency unless it has a legitimate need for the information.
"(b) Noncriminal justice persons and agencies may receive criminal history record information for such purposes and under such conditions as may be authorized by law, including rules and regulations adopted pursuant to this act.
"(c) In addition to any other remedy or penalty authorized by law, any individual violating or causing a violation of the provisions of this section shall be deemed guilty of a class A nonperson misdemeanor. If the person is employed or licensed by a state or local government agency, a conviction shall constitute good cause to terminate employment or to revoke or suspend a license."
Custody time information may be contained in several different types of records, including a report made to or received from a central repository collecting criminal history information. State and federal statutes[13]
and regulations impose criminal history reporting requirements on criminal justice agencies. Most of these reporting requirements are aimed at ensuring that "down stream" criminal justice agencies — prosecutors, courts, probation/parole offices and corrections agencies — provide accurate and prompt disposition data to the central repositories.[14]
The federal government collects such records through its National Crime Information Center (NCIC).[15] Kansas, through the Kansas Bureau of Investigation (KBI), operates a central criminal history record repository that receives case-processing information contributed by law enforcement agencies, prosecutors, courts and corrections agencies throughout the State. This and other state repositories compile this information into comprehensive criminal history records or "rap sheets," as they are sometimes called. Rap sheets are then in turn made available to criminal justice agencies and personnel for authorized purposes.
What information is contained in a typical "rap sheet" may vary according to the jurisdiction and the history of the individual in question. However, criminal history record information often contains personal identifying information (height, weight, date of birth, place of employment, identifying marks like scars, automobile registration, etc.), fingerprints, arrests made, charges filed and dispositions of any cases.[16] Much of this information is now automated. This is to facilitate ease and speed of access. The accuracy of such information is important, for obvious and many reasons, but completeness and 100% accuracy remain elusive, possibly because of lack of uniformity among jurisdictions (even intra-state) and human error.
K.S.A. 22-4705 establishes the types of information that should be reported to the central repositories:
"(1) Issuance of an arrest warrant;
"(2) an arrest;
"(3) release of a person after arrest without the filing of a charge;
"(4) dismissal or quashing of an indictment or criminal information;
"(5) an acquittal, conviction or other disposition at or following trial, including a finding of probation before judgment;
"(6) imposition of a sentence;
"(7) commitment to a correctional facility, whether state or locallyoperated;
"(8) release from detention or confinement;
"(9) an escape from confinement;
"(10) a pardon, reprieve, commutation of sentence or other change in a sentence, including a change ordered by a court;
"(11) judgment of an appellate court that modifies or reverses the lower court decision;
"(12) order of a court in a collateral proceeding that affects a person's conviction, sentence or confinement, including any expungement or annulment of arrests or convictions pursuant to state statute; and
"(13) any other event arising out of or occurring during the course ofcriminal justice proceedings declared to be reportable by rule orregulation of the director."[17]
The emphasized sections do not mention the phrase "custody time." However, the date someone is booked into a county jail, and subsequently released, appears to be one situation in which "custody time" may be recorded. Thus, such information is a reportable event under K.S.A. 22-4701et seq. Documents made or received by a county sheriff's office, pursuant to the CHRI, will therefore become subject to CHRI rules. In partial answer to your second question, a record is subject to the CHRI if it is created in order to make a report under the CHRI or the record (and the information therein) is part of a history report obtained from a central repository collecting such information.
Nevertheless, custody time information may also be contained in other types of public records. Different types of records are often subject to different laws. For example, while the custody time information may eventually be provided to the central repository, it may also be recorded in a police blotter or jail log. Police blotters and jail logs are not records for which closure exists.[18]
K.S.A. 22-4701 defines "criminal history record information" to mean "data initiated or collected by a criminal justice agency on a person pertaining to a reportable event." However, the term does not include:
"(1) Data contained in intelligence or investigatory files or police work-product records used solely for police investigation purposes; (2) wanted posters, police blotter entries, court records of public judicialproceedings or published court opinions; (3) data pertaining to violations of the traffic laws of the state or any other traffic law or ordinance, other than vehicular homicide; or (4) presentence investigation and other reports prepared for use by a court in the exercise of criminal jurisdiction or by the governor in the exercise of the power of pardon, reprieve or commutation."[19]
Thus, under K.S.A. 2001 Supp. 22-4701(b)(2), if custody time information is contained in a police blotter or court record, that type of record is not considered criminal history record information and the public record is presumptively open under the KORA.
Custody time information may be reported as an event falling under the CHRI. Such documents can then only be disseminated in accordance with that Act.[20] The KBI has adopted rules and regulations concerning access to criminal history record information. K.A.R. 10-12-2 states:
"Criminal justice agencies may provide non-conviction criminal history record information to the following: (a) other criminal justice agencies; (b) those authorized by court order or subpoena; and (c) federal agencies for such investigative purposes as authorized by law or presidential executive order."
K.A.R. 10-12-3 then provides
"Persons employed as part of a criminal justice information system, which is not operated by a criminal justice agency, shall disseminate criminal history record information only to a criminal justice agency as defined in K.S.A. 1980 Supp. 22-4701."
Thus, if the record meets the definition of a CHRI record, it may be disseminated,[21] but only as allowed by the CHRI and regulations under that Act. While there are other laws allowing certain entities access to these records,[22] they are generally available only to criminal justice agencies.[23] Under K.S.A. 2001 Supp. 22-4701(c), "criminal justice agency" means:
"[A]ny government agency or subdivision of any such agency which is authorized by law to exercise the power of arrest, detention, prosecution, adjudication, correctional supervision, rehabilitation or release of persons suspected, charged or convicted of a crime and which allocates a substantial portion of its annual budget to any of these functions. The term includes, but is not limited to, the following agencies, when exercising jurisdiction over criminal matters or criminal history record information: (1)State, county, municipal and railroad police departments, sheriffs' offices and countywide law enforcement agencies, correctional facilities, jails and detention centers; (2) the offices of the attorney general, county or district attorneys and any other office in which are located persons authorized by law to prosecute persons accused of criminal offenses; 3) the district courts, the court of appeals, the supreme court, the municipal courts and the offices of the clerks of these courts; (4) the Kansas sentencing commission; (5) the Kansas parole board; and (6) the juvenile justice authority."
Thus, in answer to your first and second questions, any record concerning an inmate and possessed by the county qualifies as a public record and is subject to the KORA. If a public record is created or obtained as part of the CHRI reporting process, such records should only be provided to those requesters who are entitled to it under that Act. Under the CHRI Act, courts may obtain or order release of CHRI records. However, the defendant, defense attorneys and bonding companies are not listed under the definition of a "criminal justice agency" under the CHRI. They may make a request, but it becomes a discretionary decision on the part of the criminal justice agency possessing that information. Absent a court order or subpoena, CHRI records and information are not mandatorily open to such individuals or entities. Nevertheless, if the custody time information is contained in another type of public record, and closure authority does not exist or apply to that type of record, it must be provided to anyone requesting such a record. In addition, the defendant and his attorney may be able to obtain specific types of information under the Kansas Criminal Procedure Act.[24]
You ask, "should custody time be disseminated verbally or in written form?" The KORA rules apply to existing public records that are not otherwise closed by some law. Under the KORA,[25] copies or access must be provided, which ever is requested. If the requestor wants an actual copy of a public record, the copy must be provided unless the record is closed pursuant to specific legal authority. If the record contains "mixed information," some of which is open but other parts that are closed by law, the KORA requires that the document be redacted to eliminate the closed information and the remaining portions of the public record should then be provided.[26] If the record is not open under the KORA, because it is closed under the CHRI, that Act does not dictate in what form such criminal history information must be disseminated to those entities permitted access under that Act. The decision on how to provide such requested information appears to be discretionary. However, given the dictates of the KORA and the possibility for errors whenever there is an oral communication, providing requested information in writing may be the more prudent practice.
Your next two questions are, "[i]f the District Court is given access to on-line retrieval of the Sheriff's custody time records (database), can they disseminate the information, without restriction, to any inquiring and/or requesting party?" and "would an Internet website, managed by the Sheriff, with unrestricted public access to custody time, violate any (federal or state) criminal history records acts?"
An important issue will be what type of record is possessed or provided to the court or the general public, i.e. whether or not such information was obtained from a CHRI record or from some other type of record such as police blotter or jail log. If a record is open under the KORA, there are no restrictions upon any subsequent dissemination or use of such records.[27] On the other hand, the CHRI restricts use of records in or obtained from that system. A court and the sheriff's office meet the definition of a criminal justice agency under K.S.A. 22-4701. If a court or sheriff's office obtains or creates records as part of the CHRI process, subsequent re-release of such information remains subject to the rules stated in K.S.A. 22-4707, "a criminal justice agency and the central repository may not disseminate criminal history record information except in strict accordance with laws including applicable rules and regulations adopted pursuant to this act." Thus, the type of record from which such information was obtained will dictate the rules with regard to any subsequent dissemination of that information.
Your final query is, "[w]hat liability issues could the Sheriff be exposed to, based on omissions or inaccurate information in their custody time record (database)?"
The United States Constitution is largely neutral with respect to the dissemination of criminal history record information. The Constitution does recognize that there is a legitimate privacy interest in sensitive personal information.[28] However, the United States Supreme Court has also held that constitutional privacy principles do not limit dissemination by criminal justice agencies of information about official acts such as an arrest.[29] In a statutory context, the Court has recognized that there is a privacy interest in an automated comprehensive criminal history record.[30] The CHRI itself provides criminal penalties for misuse of the system and records contained therein.[31]
However, these provisions and cases speak more to dissemination rather than to omissions or inaccurate information.
In Vann v. Oklahoma State Bureau of Investigation et al.[32] the court examined the prisoner's claim that the defendants created and maintained false or incorrect information in his criminal history record, resulting in his being denied parole and access to a lower-level security classification and prison programs. The complaint asserted legal claims for "false documentation," slander, irreparable injury to reputation, conspiracy, "imparting or conveying false information," and "false records and reports" and asked for damages, including punitive damages, and expungement or deletion of the false information from his criminal history record. The court dismissed the claim and denied the requested relief, stating in part
"If he were successful in showing that parole was denied because of false information contained in his criminal history report, this would necessarily cast doubt on the parole decision itself. Before bringing a damage claim that casts doubt on the length of a prisoner's continued incarceration, the prisoner must first pursue a successful action for habeas corpus. Edwards v. Balisok, 520 U.S. 641 (1997); see alsoButterfield v. Bail, 120 F.3d 1023, 1024 n. 1 (9th Cir. 1997) (barring action for damages where inmate, who had not yet pursued his claim through a writ of habeas corpus, sought damages because false information in prison file was used to deny parole). We conclude that Vann has failed to allege that the defendants' allegedly false statements damaged any of his constitutionally-protected interests. His damage claims under § 1983 therefore fail."
Because an individual's criminal history can impact future sentences, the accuracy of conviction information can be very critical.[33]
However, there is a procedure whereby the offender may challenge or correct information in the history report.[34]
We have been unable to locate any case law wherein a court examined liability when a law enforcement agency is accused of making errors or omitting information specifically concerning custody time. That is not to say such liability would not be possible if an error or omission occurred without some legal defense and any resulting damages were serious enough. Nevertheless, without specific facts, we cannot further address the potential for liability.
In summary, it is our opinion that records concerning "custody time,"i.e., records that disclose the actual amount of time a specific individual has been incarcerated, that are in the possession of a county sheriff's office, qualify as public records as defined by K.S.A. 45-217(f). Because public agencies that possess custody time information may obtain, handle or create records containing that type of information in different ways, the facts of each situation will dictate what laws may apply to require, restrict or allow providing access to or copies of the records containing custody time information. If the "custody time" information is contained in a report made to or obtained from a central repository under the Criminal History Record Information Act, that type of information and record is closed in many instances, and records of that type should only be made available to entities as set forth in that Act and related regulations. If "custody time" information is contained in a police blotter or a court record, that type of record is not considered criminal history record information and is presumptively open under the Kansas Open Records Act.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:jm
[1] K.S.A. 22-4701 et seq.
[2] K.S.A. 45-215 et seq.
[3] Public agency is defined as "the state or any political or taxing subdivision, or any office, officer, or agency thereof, or any other entity, receiving or expending and supported in whole or part by public funds." K.S.A. 45-217(e).
[4] K.S.A. 45-217(f). See Burroughs v. Thomas, 23 Kan. App. 2d 769, Syl. ¶ 1 (1997) ("[a]ny recorded information regardless of form or characteristics" means that "public records are not restricted to written records"); State ex rel. Stephan v. Harder, 230 Kan. 573 (1982) (computer data is a "record" considering prior records statute); Attorney General Opinions No. 87-137, 88-152, 89-106, 94-104, 2002-1.
[5] K.S.A. 45-218.
[6] Attorney General Opinion No. 98-51.
[7] See Note 3.
[8] Id.
[9] Absent a record containing requested information about custody time, there may still be a duty to provide that information to specific types of entities. However, the question of what kinds of information must be provided to specific requesters would then fall under other legal principles outside the scope of the KORA. For example, a judge may have the authority to compel attendance by witnesses who can provide the court with necessary information, and the United States Constitution may require that certain information be shared with defense counsel in order to protect due process rights of defendants.
[10] See K.S.A. 45-218; 45-219; 45-220. Computerized information can meet the definition of a public record and must be provided in the form requested if the public agency has the capability of producing it in that form. Attorney General Opinions No. 88-152; 89-106; 87-137.
[11] "(a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose: (1) Records the disclosure of which is specifically prohibited or restricted by federal law, state statute or rule of the Kansas supreme court or the disclosure of which is prohibited or restricted pursuant to specific authorization of federal law, state statute or rule of the Kansas supreme court to restrict or prohibit disclosure."
[12] K.S.A. 22-4701 et seq.
[13] The FBI's basic statutory authority to maintain criminal history records is found in Section 534 of Title 28 of the United States Code. The U.S. Attorney General is authorized to "acquire, collect, classify and preserve identification, criminal identification, crime and other records" and to "exchange such records and information with, and for the official use of, authorized officials of the Federal Government, the States, cities and penal and other institutions."
[14] See K.S.A. 22-5001 et seq., The National Crime Prevention and Privacy Compact.
[15] This computerized system links together the participating states and federal law enforcement authorities.
[16] See also K.S.A. 2001 Supp. 22-5001(5)(a).
[17] Emphasis added.
[18] Attorney General Opinions No. 87-25; 98-38.
[19] Emphasis added.
[20] "Disseminate means to transmit criminal history record information in any oral or written form. The term does not include: (1) The transmittal of such information within a criminal justice agency; (2) the reporting of such information as required by this act; or (3) the transmittal of such information between criminal justice agencies in order to permit the initiation of subsequent criminal justice proceedings against a person relating to the same offense." K.S.A. 2001 Supp.22-4701(f).
[21] Id.
[22] See e.g. K.S.A. 17-2234 (use of such records for background checks on certain state employees); Attorney General Opinion No.2001-29.
[23] But see Attorney General Opinion No. 94-9 (acknowledges that while criminal history record information is not open to the public and disclosure is restricted by statute, persons may request conviction records on individuals from a criminal justice agency, and the agency may discretionarily disclose the requested records).
[24] K.S.A. 22-2101 et seq.
[25] K.S.A. 45-219; 45-220.
[26] K.S.A. 2001 Supp. 45-221(d). See also Tew v. Topeka Police Fire Civ. Serv. Comm'n, 237 Kan. 96 (1985); State ex rel. Stephanv. Harder, 230 Kan. 573 (1982).
[27] Unless the public record contains a list of names and addresses and is therefore subject to the prohibitions and restrictions in K.S.A.21-3914.
[28] Whalen v. Roe, 429 U.S. 589 (1977).
[29] Paul v. Davis, 424 U.S. 693, 713 (1976).
[30] Department of Justice v. Reporters Committee for Freedom ofthe Press, 489 U.S. 749 (1989).
[31] K.S.A. 22-2707(c) provides a Class A misdemeanor penalty.
[32] No. 01-6102 (10th Circ. 2001).
[33] See K.S.A. 21-4709.
[34] K.S.A. 21-4715 allows the admission of a criminal history record in open court and permits the offender to dispute the accuracy of any part.