In re the Matter of the ESTATE OF Candice Louise WESTFALL, Deceased, Carter J. Westfall, Personal Representative, Appellant and Cross–Appellee,

v.

Wesley WESTFALL, Intervenor–Appellee and Cross–Appellant.

No. 95CA1375.

Colorado Court of Appeals, Div. II.

Nov. 29, 1996.

Rehearing Denied Jan. 3, 1997.

Certiorari Denied Aug. 18, 1997.

Julian H. Allen, Colorado Springs; Ronald A. Peterson, J.D., Ronald A. Peterson, Colorado Springs, for Appellant and Cross–Appellee.

Mulliken, Gleason & Weiner, P.C., Murray I. Weiner, Mary M. Kominek, Colorado Springs, for Intervenor–Appellee and Cross–Appellant.

Opinion by Judge CRISWELL.

Both Carter J. Westfall (husband), as the personal representative of the estate of Candice Louise Westfall (decedent), and intervenor, Wesley Westfall (brother), appeal from the judgment of the district court which affirmed in part and reversed in part the decision of the probate magistrate awarding to brother funds in certain credit union accounts held in decedent's name at the time of her death. We affirm in part and reverse in part.

Decedent commenced a dissolution of marriage action in 1992. Approximately one week before beginning this action, she transferred some $6000 held in a joint account with husband to two new accounts (pre-filing accounts). These pre-filing accounts were held in decedent's name alone. However, on each, she named her brother as the person to whom the accounts were to be paid upon her death (POD beneficiary). *See* § 15–15–201(8), C.R.S. (1996 Cum.Supp.); § 15–15–211, C.R.S. (1966 Cum.Supp.).

Approximately two months after the dissolution action began, decedent also removed husband's name from two other joint credit union accounts (post-filing accounts). Again, brother was designated as the POD beneficiary.

While the dissolution action was still pending, decedent committed suicide. Husband was named the personal representative of her estate. Both husband and brother claim ownership of all of the accounts.

In this probate proceeding, husband obtained a temporary restraining order prohibiting disbursement from the accounts, and brother intervened to seek vacation of that order. The issue was referred to a magistrate to whom the parties submitted a written stipulation; no other evidentiary materials were presented. After consideration of that stipulation, the probate magistrate awarded all accounts to the brother.

Husband sought review of the magistrate's order by the district court, which reversed that order, in part, and awarded the post-filing accounts to husband, as the personal representative of decedent's estate. Husband appeals the award of the pre-filing accounts to brother, and brother cross-appeals, challenging the district court's decision to award the two post-filing accounts to husband.

I.

Husband contends that the court erred in not imposing a constructive trust upon the funds that were in the pre-filing accounts. We disagree.

Prior to the adoption of the present probate code in 1973, § 15–10–101, et seq., C.R.S. (1987 Repl.Vol. 6B), a spouse had the unfettered right during his or her lifetime to transfer property owned by that spouse to a third party, even though such transfer was intended to deprive the other spouse of the right to inherit, so long as the transfer was bona fide and not merely colorable. *See Estate of Barnhart,* 194 Colo. 505, 574 P.2d 500 (1978) (establishment by husband of joint bank account with daughters, so that daughters received funds on husband's death, not colorable). Moreover, such a transfer was not considered to be fraudulent simply because it had the effect of depriving the other spouse of inheritance rights in the property transferred. *Moedy v. Moedy,* 130 Colo. 464, 276 P.2d 563 (1954).

The present probate code's adoption of the concept of an "augmented estate" requires that the value of certain property transferred by a spouse during the marriage be considered in determining the surviving spouse's right of election under § 15–11–201, C.R.S. (1996 Cum.Supp.). *See* §§ 15–11–202 and 15–11–203, C.R.S. (1996 Cum.Supp.). Here, however, husband does not assert that the value of other property received by him was insufficient to satisfy his elective-share rights; he makes no claim under § 15–11–201.

Hence, the district court concluded, and we agree, that, because decedent owned an undivided one-half interest in the pertinent joint account, she had an equal right to deplete the funds in it, to create the pre-filing accounts, and to designate a new POD beneficiary. *See In re Marriage of Posinoff,* 683 P.2d 377 (Colo.App.1984).

■ Moreover, nothing within the parties' written stipulation was sufficient to establish that the creation of the pre-filing accounts was only colorable or that the wife entertained any fraudulent intent. By her actions, she may have demonstrated an intent to deprive husband of his inheritance rights in these funds. Evidence of such intent, however, is insufficient to establish a fraudulent transfer. *Moedy v. Moedy, supra.*

Likewise, we conclude that the transfer of funds in these accounts cannot be considered to be violative of a confidential relationship. There is nothing in the written stipulation that would support such a conclusion.

Finally, husband's assertions that the magistrate made erroneous factual findings need not be addressed by us. Those findings do not affect our conclusions with respect to this issue, and to this extent, they are irrelevant.

## II.

■ Brother asserts that the district court erred in awarding the post-filing accounts to the decedent's estate. We agree.

The written stipulation of the parties established that decedent knew that her changing of the post-filing accounts from a joint status to a single-party account in her name alone would not affect the dissolution court's authority to treat those accounts as part of the marital estate. Indeed, that stipulation related that her counsel in the dissolution proceedings would testify that decedent had agreed that all of the accounts were to be included in the marital estate.

Based on these facts, the magistrate determined that decedent entertained no fraudulent intent and, therefore, that there existed no basis for the imposition of any constructive trust upon any of the accounts.

In the review proceedings before the district court, the husband asserted that, because the "transfer" of the post-filing accounts by decedent violated the automatic stay provisions of § 14–10–107, C.R.S. (1987 Repl.Vol. 6B), such transfer was void, or in the alternative, that a constructive trust in favor of her estate should be imposed upon these accounts.

Section 14–10–107 restrains the parties to a dissolution action from "transferring, encumbering, concealing, or in any other way disposing of, without the consent of the other party or order of the court, any marital property."

The brother argues that decedent did not violate this statute merely by changing the accounts from multi-party accounts to one bearing her name only. He asserts that the mere change of the name on the accounts did not cause them to be placed outside the marital estate and did not create any third-party interest in any marital assets—actions which the pertinent statute was designed to prohibit.

The husband does not assert that the change of the names on the post-filing accounts diminished the marital estate subject to division by the dissolution court. He insists, however, that the addition of the brother's name as the POD beneficiary constituted a "transfer" or "encumbrance" of the marital property.

The district court agreed that the naming of the brother as the POD beneficiary "amounted to an encumbrance on the accounts." And, based upon this conclusion, it directed that the post-filing accounts were to be a part of the probate estate. However,

the premise relied upon by the trial court was erroneous.

██ Even if we assume that a change of the names on the accounts violated·§ 14–10–107, such "transfer" itself had no effect upon husband's rights, either in the marital estate or in the probate estate. Funds held in an account, either in the single name of one of the parties or in their joint names, are equally a part of the marital estate. Further, as the trial court recognized, either party to a joint account has the legal right to deplete it. *In re Marriage of Posinoff, supra.* Hence, the mere change of names on the account gave decedent no greater practical control over the funds than she possessed before the change. Likewise, but for the addition of a POD beneficiary to these accounts, husband would have inherited them as decedent's sole heir.

It was, therefore, the designation of the brother as the POD beneficiary that affected husband's rights as her heir. Such designation, however, did not "encumber" any marital property.

██ Section 15–15–211(3), C.R.S. (1996 Cum.Supp.) specifically provides that such a beneficiary "has no right to sums on deposit during the lifetime of any party." Hence, had decedent lived, all of the marital property, including the subject accounts, would have been distributed between husband and decedent without regard to the POD designation. The POD designation on these accounts, therefore, had no effect upon the marital estate and was similar to the designation of a beneficiary on a life insurance policy. Such designations do not constitute a transfer or encumbrance of any marital property. *See Gorman–English v. Estate of English,* 849 P.2d 840 (Colo.App.1992).

We conclude, therefore, that, because designating a POD beneficiary does not constitute an "encumbrance" under § 14–10–107, there is no basis for distinguishing between the pre-filing accounts and the post-filing accounts. The brother, therefore, is entitled to the proceeds on deposit in all the accounts.

The order awarding the pre-filing accounts to brother is affirmed; the order awarding the post-filing accounts to the husband is reversed, and the cause is remanded to the trial court to enter an order consistent with the views set forth in this opinion.

PLANK and KAPELKE, JJ., concur.