(937 P.2d 12)
No. 75,902

LEO BURROUGHS, *Appellee,* v. GEORGE E. THOMAS, M.D., Shawnee County Coroner, *Appellant.*

Opinion filed April 11, 1997.

*Laura M. Graham,* assistant county counselor, and *Sandra L. Jacquot,* county counselor, for appellant.

*Richard C. Evans,* of Schroer, Rice, P.A., of Topeka, for appellee.

Before MARQUARDT, P.J., GREEN, J., and CAROL J. BACON, District Judge, assigned.

BACON, J.: Dr. George E. Thomas, Shawnee County Coroner, appeals from the district court's decision that his records were public records subject to public disclosure under the Kansas Open Records Act (KORA), K.S.A. 45-215 *et seq.*

Leo Burroughs is the surviving spouse of Launcelot Burroughs, who died February 2, 1995. As coroner, Dr. Thomas conducted an investigation and performed an autopsy to determine the cause of Launcelot's death. Dr. Thomas then filed a report of his findings with the clerk of the district court.

After obtaining a copy of Dr. Thomas' report, Leo sought disclosure of all the coroner's investigative records. On behalf of Dr. Thomas, the Shawnee County Counselor's office refused the request, citing K.S.A. 45-221(a)(3), which provides that medical records are exempt from public disclosure under the KORA. However, Leo was informed that if the county received a subpoena, the records would be provided.

Leo then filed suit against Dr. Thomas, seeking to obtain the requested records. In its memorandum and decision, the district court found that Dr. Thomas' investigative records were public records subject to disclosure under the KORA and that no statutory exemptions applied. However, the district court also entered a protective order, allowing only Leo access to the records.

Dr. Thomas claims that the trial court erred, arguing that: (1) some of the records at issue do not meet the definition of "records" in the KORA; (2) if his records did fall under the KORA, three statutory exemptions applied; (3) the KORA and the included exemptions must be read in conjunction with the statutes governing the duties of district coroners; and (4) public policy mandates that a coroner's report be exempt from public disclosure.

Dr. Thomas agrees that the district coroner is subject to the provisions of the KORA pursuant to K.S.A. 1996 Supp. 45-217(e)(1) and that coroners' reports are public records. The sole issue is whether the coroner's underlying investigative materials are public records subject to public disclosure.

This case involves interpretation of the KORA and the statutes governing district coroners; therefore, this court's standard of re-

view is plenary. *Foulk v. Colonial Terrace,* 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

Dr. Thomas argues that not all of his records are public records as defined under the KORA. Dr. Thomas asserts that the items the district court ordered to be publicly disclosed included not only his report, but also some of Launcelot's medical records, a variety of internal notes, a weight sheet, diagrams, and photographs. It is the disclosure of these items to which Dr. Thomas objects.

A public record is "any recorded information, *regardless of form or characteristics."* (Emphasis added.) K.S.A. 1996 Supp. 45-217(f)(1). Under this definition, public records are not restricted to just written information. Diagrams and photographs would clearly constitute records and other items would be considered on an individual basis.

K.S.A. 45-216(a) provides: "It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act, and this act shall be liberally construed and applied to promote such policy."

Dr. Thomas argues that even if his investigative records are public records, they fall into three of the exempted classes of records: medical records, notes and research data, and records of a personal nature. K.S.A. 1996 Supp. 45-221(a)(3) provides that an agency is not required to disclose "[m]edical, psychiatric, psychological or alcoholism or drug dependency treatment records which pertain to identifiable patients." Dr. Thomas argues that because district coroners must be licensed to practice medicine and surgery, their procedures are medical. Therefore, all records compiled in conjunction with such procedures are medical records. However, the Kansas statutes governing the duties of district coroners indicate that the legislature did not intend for these records to be considered medical records under the KORA. See K.S.A. 22a-232; K.S.A. 22a-233. Dr. Thomas' argument is not persuasive.

Dr. Thomas argues that because he is a licensed physician, any record he generates is a medical record pursuant to K.S.A. 45-221(a)(3). However, the Kansas statutes governing a coroner's duties indicate otherwise. See K.S.A. 22a-232; K.S.A. 22a-233. In particular, K.S.A. 22a-233(c) states: "A *full* record and report of the

facts developed by the autopsy and findings of the pathologist performing such autopsy shall be promptly made and filed with the coroner and with the clerk of the district court of the county in which decedent died." (Emphasis added.) The records referenced in these statutes are clearly public records. The legislature has made no attempt to define autopsy records as medical records, which would exempt them from public disclosure.

The second statutory exemption upon which Dr. Thomas relies is K.S.A. 1996 Supp. 45-221(a)(20), which provides that an agency is not required to disclose

"[n]otes, preliminary drafts, research data in the process of analysis, unfunded grant proposals, memoranda, recommendations or other records in which opinions are expressed or policies or actions are proposed, except that this exemption shall not apply when such records are publicly cited or identified in an open meeting or in an agenda of an open meeting."

Dr. Thomas argues that his records fall under this exemption because they include information that he gathered while investigating the cause of Launcelot's death. Dr. Thomas then prepared his final report from that information.

The Kansas Attorney General has issued an opinion indicating that once a report is final and becomes a public record, preliminary working papers may no longer be withheld from disclosure under K.S.A. 45-221(a)(20). Att'y Gen. Op. No. 91-138. Contrary to Dr. Thomas' argument, no exemption exists for work papers once a report becomes a public record.

The last statutory exemption upon which Dr. Thomas relies is K.S.A. 1996 Supp. 45-221(a)(30), which provides that an agency is not required to disclose "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." The Kansas survival of actions statute, K.S.A. 60-1801, does not provide for survival of a cause of action for invasion of privacy, which generally may only be claimed by the person whose privacy was invaded. This exemption does not apply here.

Dr. Thomas argues that public policy mandates that a coroner's report be exempt from public disclosure. In determining which public records are exempt from public disclosure, the legislature

has chosen not to include a coroner's report. Courts may only apply and enforce legislation. See *Kansas Human Rights Comm'n v. Topeka Golf Ass'n,* 18 Kan. App. 2d 581, 593, 856 P.2d 515 (1993), *aff'd* 254 Kan. 767, 869 P.2d 631 (1994). These public policy arguments are better made to the legislature.

Although the district court found that Dr. Thomas' records did not fall under any of the exemption statutes, it still entered a protective order, allowing disclosure only to Leo without leave of the court. K.S.A. 45-218(a) states in part: "All public records shall be open for inspection by any person, except as provided by this act." The district court did not have the authority to close public records which were not statutorily exempt from public disclosure.

The final issue involves all of the medical records that were developed throughout Launcelot's lifetime. The district court's order made all of Dr. Thomas' records subject to disclosure, including these medical records. K.S.A. 1996 Supp. 45-221(a)(2) exempts from public disclosure "[r]ecords which are privileged under the rules of evidence, unless the holder of the privilege consents to the disclosure."

K.S.A. 60-427 establishes an evidentiary privilege against revealing confidential physician-patient communications. K.S.A. 60-427(a)(4) defines communication as "information transmitted between physician and patient, including information obtained by an examination of the patient." The medical records that were compiled prior to Launcelot's death fall under the definition of confidential physician-patient communications. Leo is now the holder of this privilege as "the personal representative of a deceased patient." K.S.A. 60-427(a)(3).

Because Leo is the holder of the privilege and he gave his consent to disclose the records, the disclosure to him was proper. However, the district court's broad holding that all of Dr. Thomas' records were subject to public disclosure was in error.

We affirm that part of the district court's decision which found that the coroner's records were public records. We reverse that part of the district court's decision which allowed the medical records that were compiled prior to Launcelot's death to be disclosed to the public. We also reverse the district court's protective order.

Affirmed in part and reversed in part.