Michael J. Armstrong, Counsel Water District No. 1 of Johnson County 10747 Renner Blvd. Lenexa, Kansas 66219
Don Jarrett, Counsel Johnson County Wastewater 111 S. Cherry, Suite 3200 Olathe, Kansas 66061
Tom Glinstra, Counsel City of Olathe 126 S. Cherry, P.O. Box 768 Olathe, Kansas 66051
Dear Messers. Armstrong, Jarrett and Glinstra:
As Counsel for Water District 1 of Johnson County (Water District), Johnson County Wastewater (JCW), and the City of Olathe (City), respectively, you request our formal opinion regarding release of municipally operated utility customer billing records. Specifically, you ask whether the Kansas Open Records Act (KORA) or K.S.A. 21-3914 would impact the sharing of certain utility records among the three entities.
The facts you provide indicate that the three entities in question would like to cooperate in the provision of services and billing of customers. The Water District operates under K.S.A. 19-3501 et seq., serving a population of approximately 350,000 (commercial and individual) customers. The City operates its own water utility and is completely independent of the Water District. JCW is a part of Johnson County government and is responsible for the collection and treatment of wastewater for most municipalities in Johnson County, including a portion of the City of Olathe.
Currently, JCW `s billing method is ad valorem based. The water utilities, however, charge occupants based upon actual consumption. In January of 2002, the Johnson County Board of County Commissioners (BOCC) approved conversion of JCW's wastewater billing to a system based upon each customer's water usage. JCW intends to contract with a private company (Outsourcing Services, Inc.) to produce the resulting wastewater bills and handle its customer service requirements. In order to implement such a system, JCW needs customer data from the water purveyors that serve JCW customers, including the water account number, customer names, service addresses, mailing addresses, customer service class data, water usage and other related information concerning customer use and consumption. JCW has requested this information, contained in public records, from the City and the Water District. Both the City and the Water District are interested in cooperating with JCW, provided that it does not violate the Kansas Open Records Act (KORA) or other laws. The parties wish to share the customer information if JCW will agree to protect the data and only use it for the internal needs of JCW and its agents, in connection with billing for wastewater usage.
In July of 2002, the Water District Board, acting in accordance with authority set forth in K.S.A. 19-3514, amended its rule and regulation concerning public records. The regulation in question now states:
"The Freedom of Information Officer or the Official Records Custodian shall not disclose any records or information not required to be disclosed as provided in K.S.A. 2001 Supp. 45-221. The Freedom of Information Officer and the Official Record Custodian shall be particularly attentive to prevent disclosures of the subject matter of subsection 12 relating to security information on District facilities and to subsection 26 relating to lists of identifiable residential customers. Pursuant to an Intergovernmental Agreement approved by the Water District Board certain customer data related to residential customers may be provided to Johnson County Wastewater for the purpose of JCW billing its customers for wastewater service based upon water usage."
Thus, it does not appear that any internally adopted policies would prohibit the intended sharing of information.
You specifically ask us to address:
"(1) Whether providing the requested customer information and data, and in particular names and addresses to the County wastewater districts for its billing purposes is legally permissible under the Kansas Open Records Act; and
"(2) Whether obtaining and using the information and data by the County's wastewater districts for its billing purposes would constitute selling or offering for sale property or services to those customers, which would be prohibited by the provisions of K.S.A. 21-3914."
The KORA[1] states the general rule that public records[2] are presumed open for inspection and copying, by anyone, unless closed by a law applicable to the type of record in question. Thus, the KORA favors openness for all public records. Specific records may be closed pursuant to specific authority. K.S.A. 2001 Supp. 45-221, as amended by L. 2002, Ch. 178, § 1, contains a list of the types of records that may be closed.
K.S.A. 2001 Supp. 45-221(a)(26), as amended, allows discretionary closure of residential customer billing records of municipal utilities:
 "(a) Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose:
. . . .
 "(26) records of a utility or other public service pertaining to individually identifiable residential customers of the utility or service, except that information concerning billings for specific individual customers named by the requester shall be subject to disclosure as provided by this act."
K.S.A. 2001 Supp. 45-221(a)(30), as amended, allows closure of public records "containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." K.S.A. 21-3914 requires public record custodians to deny access to records containing names and addresses if the requestor intends to contact the persons thus listed for the purpose of commercial solicitation, and provides a criminal penalty for unlawful release or use of such public records.
K.S.A. 2001 Supp. 45-221(a)(26), as amended, permits closure of public records of residential utility customers of that service. Thus, with the exception of a request for information related to a specific customer, a public utility may choose to close customer billing records and information.[3] However, this is discretionary and not mandatory closure authority, meaning that a public agency is not required to close this type of record. The exception allowing closure of public agency utility records was added by the 1984 Legislature after a director of computer services for the City of Topeka argued that it was an invasion of privacy for a public utility to release individually identifiable billing records. A floor amendment added the exception language now in place.[4] This exception allows a municipal utility to decline release of a complete list of all individual residential customers, but the billing records of specific customers named by the requestor must nevertheless be provided. We find nothing in the language of K.S.A. 2001 Supp. 45-221(a)(26), as amended, legislative history surrounding it, or subsequent discussion on it that can be interpreted as requiring the mandatory closure of utility records of a public agency falling under K.S.A. 2001 Supp. 45-221(a)(26), as amended, especially when the disclosure is to another public entity which is using that information for related billing purposes.
Like the previously discussed exception to the KORA, K.S.A. 2001 Supp.45-221(a)(30), as amended, allows but does not require closure of public records. Under this authority, the public records may be closed if they contain information of such a personal nature the disclosure would constitute a clearly unwarranted invasion of personal privacy.[5] This exception to the KORA protects individuals from a broad range of embarrassing disclosures, not just disclosures of derogatory information, and guards against the unnecessary disclosure of files that may contain intimate details of a highly personal nature.[6] For example, home addresses of public employees may sometimes be closed under this exception.[7] However, this closure authority is directed to threats more palpable than mere possibilities and the threat to the privacy interests alleged must be significant to invoke the exemption, promising a "clearly unwarranted" invasion of personal privacy, not just an incidental infringement. Thus, the issue is whether municipal utility customer billing and usage information is of a highly personal nature.
K.S.A. 2001 Supp. 45-221(a)(30), as amended, does not prohibit the disclosure of coroner's records.[8] Telephone records of an individual may be provided by a phone company, when requested by law enforcement, without it being an invasion of personal privacy.[9] Employment contract related records of physicians working at a public hospital are not protected from disclosure by K.S.A. 2001 Supp. 45-221(a)(30), as amended.[10]
Federal law provides some helpful analyses for reviewing the types of personal information that may be closed because of personal privacy concerns.[11] The Fourteenth Amendment's Due Process Clause protects individuals from state intrusion into fundamental aspects of their personal privacy.[12] One such sphere of constitutionally-protected privacy is "the individual interest in avoiding disclosure of personal matters."[13] In ascertaining whether a certain type of information is given such protection, the decision maker "must consider, (1) if the party asserting the right has a legitimate expectation of privacy [in that information], (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner."[14]
However, in evaluating information under this test, "we need not address the second and third factors if the first is not met."[15]
The records in question do not reveal information beyond water usage, billing history and contact information. Moreover, K.S.A. 2001 Supp.45-221(a)(26), as amended, requires release of such information if it is requested on a specific individual. Thus, customers of a municipal utility possess no reasonable expectation that the information will forever remain highly confidential. Finally, under the proposed sharing plan, the information in question will not be shared with the general public. Rather, the sharing is limited to providing information to another municipally operated utility company. Given these considerations, we believe that the proposed intergovernmental sharing of public records does not constitute a clearly unwarranted invasion of personal privacy.
It is therefore our opinion that neither K.S.A. 2001 Supp. 45-221(a)(26) nor K.S.A. 45-221(a)(30), as amended, prohibit the City of Olathe or Water District No. 1 of Johnson County from providing water utility customer information and billing records to Johnson County Wastewater for use in billing customers.
K.S.A. 21-3914 states that a list of names and addresses shall not be obtained from public records for the purpose of selling or offering for sale any property or service to the persons listed.[16] This provision pertains to the names and addresses of businesses listed in the public records, as well as individuals.[17] This provision does not prohibit commercial use generally. Rather, it applies to use of the records in attempting to sell or offer to sell property or services.[18] This provision does not prohibit use of lists of names obtained from public records to solicit the purchase of property from the persons listed.[19]
In this situation, the utility wastewater service in question has already been received by the customer. The list of names and addresses is not being obtained for the purpose of contacting persons therein in an attempt to persuade them to buy a new utility service or product. Rather, the customers will only receive a bill for services already rendered in accordance with their receipt of municipally provided utility services. It is therefore our opinion that the proposed sharing of the records does not violate K.S.A. 21-3914.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:jm
[1] K.S.A. 45-215 et seq.
[2] Defined by K.S.A. 45-217(f)(1) as "any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency. . . ."
[3] Attorney General Opinions No. 2000-35 and 96-68 (residential customers can be identified by name, address or other means).
[4] Frederickson, Letting the Sunshine In: An Analysis of the 1984Kansas Open Records Act, 33 U. Kan. L. Rev. 205, 255 (1985).
[5] See 5 U.S.C.A. § 552b(c)(6), which permits federal agencies subject to the FOIA to close "Investigatory records compiled for law enforcement purposes or information which if written would be contained in such records, but only to the extent that production would interfere with the enforcement proceedings, deprive a person of a right to a fair trial or an impartial adjudication, constitute an unwarranted invasion ofpersonal privacy, disclose the identity of a confidential source (and, under certain circumstances, confidential information disclosed by the source), disclose investigative techniques and procedures, or endanger the life or physical safety of law enforcement personnel."
[6] Attorney General Opinions No. 92-149 (victim of sex offense); 99-55, 98-38, 87-25 (social security number).
[7] Attorney General Opinions No. 2001-33 and 97-52. See also UnitedStates Department of Defense v. Federal Labor Relations Authority,510 U.S. 487 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994),109 S.Ct. 1468,103 L.Ed.2d 112 (1989) (disclosure of home addresses can be a clearly unwarranted invasion of personal privacy).
[8] Burroughs v. Thomas, 23 Kan. App. 2d 769 (1997).
[9] State v. Schultz, 252 Kan. 819 (1993) ("An individual has no legitimate expectation of privacy in information he or she voluntarily turns over to a third party. . . . [T]he Fourth Amendment to the United States Constitution does not prohibit the government's obtaining information revealed to a third party and conveyed by that third party to government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and that the confidence placed in the third party will not be betrayed").
[10] Southwest Anesthesia Serv. v. Southwest Medical Center,23 Kan. App. 2d 950 (1997).
[11] To decide whether either exemption prevents disclosure, we must "balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect." United States Dep't of Justice v.Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776,109 S.Ct. 1468, 103 L.Ed.2d 112 (1989). The privacy interest protected by exemptions 6 and 7 encompasses an individual's interest in avoiding disclosure of personal matters through identifying information.Department of the Air Force v. Rose, 425 U.S. 352, 380-81, 96 S.Ct. 2841,48 L.Ed.2d 11 (1976).
[12] See Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 115, 47 L.Ed.2d 405
(1976).
[13] Whalen v. Roe, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 405
(1977).
[14] Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F.2d 432,435 (10th Cir. 1981).
[15] Falvo v. Owasso Indep. Sch. Dist. No. I-011, 233 F.3d 1203, 1209
(10th Cir. 2000) vacated in part on other grounds by 288 F.3d 1236
(2002).
[16] See also K.S.A. 45-220(c)(2).
[17] Attorney General Opinion No. 87-73.
[18] Attorney General Opinion No. 98-51. See also Attorney General Opinion No. 2000-35 (a group of local ministers may use lists from public records to provide information about area churches).
[19] Attorney General Opinions No. 96-68 (water meters); 98-55 (promissory note underlying contract for deed).