(66 P.3d 929)
No. 88,765

ARTHUR E. NICHOLAS, Executor of the Estate of Sheryl A. Nicholas, deceased, *Appellant,* v. RUBY E. NICHOLAS, *Appellee,* and SHERYL A. NICHOLAS v. RUBY E. NICHOLAS.

458

Opinion filed April 18, 2003.

*J. Eugene Balloun, Celia K. Garrett,* and *Brenda R. Mesker,* of Shook, Hardy & Bacon, L.L.P., of Overland Park, and *John R. Toland,* of Toland & Thompson, L.L.C., of Iola, for appellant.

*Ted E. Knopp,* of Ted E. Knopp, Chtd., of Wichita, and *Charles H. Apt, III,* of Apt & Apt, L.L.P., of Iola, for appellee.

Before RULON, C.J., PIERRON and MARQUARDT, JJ.

MARQUARDT, J.: Arthur E. Nicholas, the son of Sheryl A. Nicholas and the executor of Sheryl's estate, appeals the trial court's denial of his motion for summary judgment and the grant of summary judgment to Ruby E. Nicholas. We affirm.

Ruby and Sheryl were married on December 4, 1972. Ruby had two children from her previous marriage; Frank and Paula Laurenzana. Sheryl had two children from his previous marriage; Arthur E. Nicholas and Susan A. Johnson. No child was born to Ruby and Sheryl.

In 1998, Sheryl was diagnosed with melanoma and told that he had less than a 50 percent chance of surviving 4 additional years. On May 9, 2000, Ruby filed for divorce and obtained an ex parte temporary restraining order prohibiting either party from disposing of any assets of the parties "except in the normal course of business."

On July 18, 2000, Sheryl executed a will devising all of his property in equal shares to Arthur and Susan, and named Arthur as

executor of his estate. During July 2000, Sheryl executed a transfer on death (TOD) form changing the beneficiary of the Van Kampen funds from Ruby to Arthur and Susan. He also executed a TOD form to transfer the Edward Jones account to Arthur and Susan, and a pay on death (POD) form transferring the funds of a checking account in the Iola Bank and Trust Company (Iola Bank) to Arthur. In August 2000, Sheryl changed the primary beneficiary of his Ameritas life insurance policy from Ruby to Arthur.

On July 26, 2000, Sheryl filed a cross-petition for divorce and a motion for an emergency divorce. On August 14, 2000, Sheryl filed a motion to sever the joint tenancy property he owned with Ruby. On August 31, 2000, Sheryl also filed suit against Ruby for invasion of privacy and trespass alleging that Ruby broke into his home and removed various documents and financial records. Sheryl demanded the return of the documents and sued for damages in excess of $50,000.

On September 6, 2000, the district court denied Sheryl's motion for an emergency divorce but granted his motions to file a cross-petition for divorce and to modify the restraining order. At the hearing, Sheryl's counsel reserved argument on the motion to sever the joint tenancies. Trial was set for October 3, 2000.

The parties attempted to negotiate a settlement agreement. On September 27, 2000, Sheryl executed a property settlement and separation agreement (Agreement) which he believed to be consistent with the terms of a previous offer made by Ruby. On September 29, 2000, Sheryl executed the "Sheryl A. Nicholas Revocable Trust Agreement" (Trust) with Arthur and Susan as equal beneficiaries. Sheryl funded the Trust with all of his personal property and certain real property.

Sheryl died on October 1, 2000, at the age of 83. On October 3, 2000, Arthur filed a motion for an order to restrain Ruby from disposing of any property listed in the Agreement, and to admit Sheryl's will to probate. The probate court acknowledged that Ruby agreed to advise the estate of the transfer of any assets owned by Sheryl and Ruby in joint tenancy.

Sheryl's will was admitted to probate on December 11, 2000, as his last will and testament after Ruby withdrew her objections. Arthur was appointed executor of Sheryl's estate.

On December 21, 2000, Arthur filed suit against Ruby alleging that: (1) Ruby refused to deliver one-half of the property titled in joint tenancy with Sheryl to the estate; and (2) Ruby breached the Agreement by refusing to release property to Arthur. Ruby acknowledged the existence of Sheryl's revised will. However, Ruby asserted that the majority of marital property was held in joint tenancy with rights of survivorship and denied that Sheryl's actions succeeded in terminating their joint tenancies. Ruby also responded that she had neither approved nor executed the Agreement.

On April 13, 2001, Ruby filed an application to amend her answer and join Arthur and Susan as additional party plaintiffs. Ruby's first amendment also served as her counterclaim and cross-claim. She alleged that Sheryl's attempts to sever joint tenancy interests and changing or naming beneficiaries on accounts and his life insurance policy violated the restraining order and were fraudulent under K.S.A. 33-201 *et seq.*, the Kansas Uniform Fraudulent Transfer Act. Ruby asked the district court to impose a constructive trust on those funds transferred by Sheryl "outside the normal course of business" to Arthur and Susan in violation of the restraining order.

Arthur responded that the district court did not have personal jurisdiction over Susan or himself, as individuals. He argued that the district court did not have subject matter jurisdiction over the Van Kampen funds, the Edward Jones account, or the Ameritas life insurance policy because the funds were situated and paid from locations outside of Kansas to parties residing outside of Kansas. The Iola Bank checking account was in the possession of the special administrator and had not been disbursed. Further, Arthur maintained that Ruby claimed these four accounts in ongoing probate proceedings. There is no indication that a hearing was held to address Ruby's motion.

Both parties filed motions for summary judgment on their respective claims. Ruby argued that: (1) Sheryl's actions did not sever the joint tenancies; (2) Sheryl violated the restraining order when he completed forms to transfer funds upon his death for the Van Kampen funds, the Iola Bank checking account, and the Edward

Jones account; (3) Sheryl further violated the restraining order by changing the beneficiary of his Ameritas life insurance policy; (4) the proposed Agreement did not bind the parties because Ruby did not sign or execute the Agreement and, without her signature, the Agreement violated the homestead laws of Kansas and the statute of frauds; and (5) Sheryl's invasion of privacy claim did not survive his death.

Arthur's motion for summary judgment argued that: (1) the restraining order did not prohibit severance of the parties' joint tenancies; (2) Sheryl acted properly in changing the beneficiary on the Ameritas life insurance; (3) Sheryl acted properly in executing a TOD form for the Edward Jones account; (4) Sheryl acted properly in executing POD forms for the Van Kampen account and the Iola checking account; (5) the Agreement signed and executed by Sheryl was binding on the parties; and (6) the invasion of privacy claim survived Sheryl's death.

On February 15, 2002, the parties signed a stipulation as to the joint or several ownership of Ruby and Sheryl's personal and real property. It was effective as of the date of Sheryl's death.

In its March 14, 2002 order, the district court granted summary judgment in favor of Ruby, noting: (1) title to the accounts should remain as they existed when the court issued the restraining order on May 9, 2000; (2) the Agreement did not bind the parties because it had not been agreed to by Ruby, or approved by the court prior to Sheryl's death, which abated the divorce proceeding; and (3) Sheryl's invasion of privacy claim did not survive his death. Arthur filed a timely appeal. After deciding issues dispositive of Arthur's suit and Sheryl's invasion of privacy claim, the district court issued an order consolidating those two cases.

Arthur filed a temporary restraining order on April 1, 2002. The district court issued its order on July 1, 2002, initially dissolving all prior restraints on the property. However, the order indicated that Ruby was restrained from "gifting or spending one-half of the joint tenants' personal property." Ruby was allowed to make estate plans and testamentary dispositions. Arthur was instructed to post a supersedeas bond in the amount of $152,674 to cover 125 percent

of the value of the Ameritas life insurance policy and the Van Kampen fund which were at the disposal of Arthur or Susan.

On July 15, 2002, Arthur filed a motion with this court to modify the July 1, 2002, stay of enforcement of the judgment entered by the district court. This court instructed the district court to hold a hearing for the limited purpose of determining: (1) whether an accounting of assets should be ordered; (2) whether property should be redistributed to restore the parties' interests; and (3) which measures, if any, should be taken to protect those interests during the pendency of the appeal. A hearing was held on August 29, 2002. The parties were unable to agree on a journal entry and the case was reset for a hearing on November 6, 2002.

On November 7, 2002, the district court issued its order listing certain assets to be restrained from any direct or indirect acts intended to liquidate, retitle, transfer, or remove them from the jurisdiction of the court.

In addition, the district court denied Arthur's request for restoration of Sheryl's one-half interest in the joint tenancy property. Counsel for the parties were ordered to immediately provide a copy of the district court's order to all entities and individuals to ensure that the orders concerned with the restrained property are followed.

### I. Were Moot Issues Decided by the District Court?

The district court ruled that Sheryl's "various efforts at modifying the title to various accounts" violated the ex parte restraining order. K.S.A. 2002 Supp. 60-1607 allows a district court to make and enforce orders after a petition for divorce has been filed. Generally, if an individual fails to do something ordered by the court, that individual may be held in civil contempt. See *Krogen v. Collins*, 21 Kan. App. 2d 723, 726, 907 P.2d 909 (1995).

"All property owned by married persons, including the present value of any vested or unvested military retirement pay, or, for divorce or separate maintenance actions commenced on or after July 1, 1998, professional goodwill to the extent that it is marketable for that particular professional, whether described in subsection (a) or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commence-

ment by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment. Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court pursuant to K.S.A. 60-1610 and amendments thereto." K.S.A. 2002 Supp. 23-201(b).

As the district court noted, the divorce action abated at Sheryl's death. See *Wear v. Mizell*, 263 Kan. 175, 180, 946 P.2d 1363 (1997). The temporary restraining order, the purpose of which was to jointly restrain the parties during the pendency of the divorce, abated at Sheryl's death. See *Dube v. Dube*, 15 Kan. App. 2d 511, 515, 809 P.2d 1245, *rev. denied* 249 Kan. 775 (1991). Appellate courts do not decide moot questions or render advisory opinions. *In re T.D.*, 27 Kan. App. 2d 331, 333, 3 P.3d 590, *rev. denied* 269 Kan. 933 (2000).

Even though a divorce action abates at the death of one of the parties, courts have continued to have jurisdiction over a deceased spouse's change of life insurance beneficiary during the pendency of a divorce. See, *e.g.*, *Wear*, 263 Kan. at 184.

Sheryl's attempts at changing various ownerships took place before the abatement of the restraining order. During the pendency of a divorce, if a general restraining order is in effect and one party attempts to sever joint tenancies, change beneficiaries on accounts that pay on death, transfer on death, or change a life insurance policy beneficiary, the district court has jurisdiction over the attempted changes, notwithstanding the death of the party who attempted the changes. The district court has jurisdiction over Sheryl's actions. Even though there is an ongoing probate case, this issue is not moot.

## II. Summary Judgment

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the

facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]' " *Mitchell v. City of Wichita,* 270 Kan. 56, 59, 12 P.3d 402 (2000).

When summary judgment is based on stipulated facts by the parties, an appellate court exercises de novo review. *Veatch v. Beck,* 252 Kan. 1081, 1082, 850 P.2d 923 (1993). Here, the parties agree that this court exercises de novo review of the district court's memorandum opinion.

### III. Restraining Order

On appeal, Arthur claims that the restraining order did not bar Sheryl from planning his estate prior to his death. Arthur claims that Sheryl did not violate the restraining order by severing joint tenancy interests in property held with Ruby, instituting or changing beneficiaries for POD and TOD accounts, or changing the beneficiary of his Ameritas life insurance policy.

K.S.A. 2002 Supp. 23-201(b) states that all "property owned" at the commencement of a divorce action becomes marital property regardless of when it is acquired or how it is titled. Each spouse has a vested interest in the property of the other, the extent of which must be determined and finalized by the court, pursuant to K.S.A. 60-1610. K.S.A. 2002 Supp. 23-201(b).

K.S.A. 2002 Supp. 60-1610(b)(1) gives the district court in a divorce action the power over changes in beneficiary designations on an insurance policy, a trust instrument, and TOD or POD accounts. The beneficiary designations for Sheryl's Ameritas life insurance policy and TOD and POD forms affected assets solely titled in his name; however, these were marital assets. The restraining order prevented the parties from disposing of any asset except in the normal course of business. Sheryl's attempts to change these accounts and policies were not done in the normal course of business.

A restraining order that restrains divorcing parties from disposing of any asset except in the normal course of business, restrains the parties from changing (1) beneficiary designations on insurance

policies; (2) joint tenancies to tenants in common; (3) transfer on death designations; or (4) pay on death designations. The items that Sheryl tried to change were all marital assets and by such changes, he violated the restraining order. The district court did not err in determining that Sheryl had violated the restraining order.

### IV. Agreement

Arthur contends that the district court erred in finding the Agreement did not bind the parties. Arthur maintains that although Ruby did not sign the Agreement, she had assented to it. Further, Arthur argues that the district court erred in ruling the Agreement could not be enforced because it was not approved by the court, as required by K.S.A. 60-1610(b)(3).

Basic contract rules apply to the formation and interpretation of separation agreements. See *Drummond v. Drummond*, 209 Kan. 86, 91, 495 P.2d 994 (1972). Under Kansas law, there must be a "meeting of the minds on all essential terms" to form a binding contract. *Albers v. Nelson*, 248 Kan. 575, 580, 809 P.2d 1194 (1991).

As set forth in the facts, each party proposed several agreements which were rejected by the other party. Central to this issue is that Ruby's counsel faxed a settlement proposal on September 19, 2000, to Sheryl's counsel. Sheryl's counsel rejected the same on September 25, 2000, and proposed a different agreement. Ruby's counsel responded that he did not expect Ruby to accept Sheryl's latest proposal, nor would he recommend that she accept it, but he would forward it to her.

On September 27, 2000, Sheryl's counsel forwarded the Agreement to Ruby's counsel which, he stated, was based on the terms of Ruby's September 19, 2000, proposal. Sheryl's counsel alleged that the Agreement constituted Sheryl's acceptance of Ruby's September 19, 2000, offer, which Ruby's counsel verbally renewed.

Arthur argues that the Agreement did not have to be in writing to be binding. Where settlement negotiations are underway, an oral agreement can be acknowledged where the plaintiff has testified in open court to the terms, the defendant and his counsel have

affirmed the same, and the court then incorporated it into the divorce decree, making it an order of the court. *Alley v. Alley*, 4 Kan. App. 2d 109, 111, 603 P.2d 215 (1979), *rev. denied* 227 Kan. 927 (1980). While a separation agreement may be considered for approval by a trial court, both parties should be present. If not, the record should clearly establish the attorney has the client's express authority to accept the agreement. See *Miller v. Miller*, 6 Kan App 2d 193, 194, 627 P.2d 365 (1981).

Here, neither party appeared before the district court and attested to the terms of the Agreement. Also, Ruby and her counsel confirmed that Ruby did not authorize any party to consummate an agreement on her behalf. Instead, after reviewing Sheryl's proposal, Ruby decided to wait for the trial scheduled for October 3, 2000.

On appeal, Ruby disputes that she renewed her September 19, 2000, offer to Sheryl. She further maintains that many additional provisions were included in Sheryl's Agreement. Notably, in determining whether there is a binding contract, it is elementary that an acceptance of an offer must be unconditional and a purported acceptance imposing new or varied terms is not effective as an acceptance and is merely a counter-offer. *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 737, 512 P.2d 379 (1973).

Only if the parties have agreed that the agreement shall be effective irrespective of court approval will it be sufficient to extinguish estate claims if one party dies prior to submission of the agreement to the court for approval. Leben's Practitioner's Guide to Kansas Family Law Handbook, § 8.26, p. 8-12 (2001 Supp.).

In any event, without Ruby's signature on the Agreement, the district court's statutory charge of assessing the validity and justness of the Agreement was not abrogated. In a divorce action, a settlement agreement that is not signed by both parties and is not approved by the district court is not a binding settlement.

The district court's decision that the Agreement was not binding is affirmed.

## V. Joint Tenancy Property

Arthur states that Sheryl severed the joint tenancies he held with Ruby and he was not precluded from doing so by the restraining order.

" 'The authorities are virtually unanimous in agreeing that a joint tenant may at his pleasure dispose of his share and convey it to a stranger and that such conveyance will result in a severance or termination of the joint tenancy. [Citation omitted]'" *Hall v. Hamilton*, 233 Kan. 880, 883, 667 P.2d 350 (1983).

"[A] joint tenancy may be terminated (1) by mutual agreement of the parties, (2) by course of conduct indicating tenancy in common, or (3) by operation of law upon destruction of one or more of the required unities (time, title, interest, and possession). [Citation omitted.]" *Campbell v. Black*, 17 Kan. App. 2d 799, 804, 844 P.2d 759 (1993).

Termination of joint tenancy results in a tenancy in common. *Campbell,* 17 Kan. App. 2d at 805. We agree that under certain circumstances, a joint tenancy may be terminated; however, while a divorce proceeding is pending with an order prohibiting either party from disposing of any asset of the parties except in the normal course of business, a joint tenancy may not be terminated unilaterally.

Next, Arthur asserts that Sheryl's actions and words expressed his intent to sever his joint tenancy interests with Ruby. Arthur argues that Sheryl: (1) filed a motion to sever joint tenancies in the divorce proceedings; (2) executed a will and a revocable trust leaving his share of marital property to his children; (3) negotiated a property settlement agreement with Ruby; (4) executed various forms designating his children as beneficiaries of solely owned assets; and (5) made numerous statements to his family, friends, lawyers, and others regarding his intent that his children would inherit his share of the property.

Neither party herein cites to a reported Kansas case of an ongoing divorce proceeding that allows one of the parties to sever joint tenancy interests without violating a restraining order.

Sheryl acknowledged that he was under restraint by the district court when he filed his motion to sever his and Ruby's joint ten-

ancies. Unlike the joint tenants in *Campbell,* who made no contributions to the subject accounts, Ruby maintains that the property was acquired during their marriage. See 17 Kan. App. 2d at 805.

Sheryl's unilateral actions and alleged intentions did not sever the joint tenancies.

## VI. Sheryl's Will

Arthur contends that Sheryl severed the joint tenancy interests by executing a will in July 2000. Arthur cites *Berry v. Berry,* 168 Kan. 253, 212 P.2d 283 (1949) to support this contention.

In *Berry,* the husband and wife executed a joint and mutual will contractually providing that at the death of one of them, the other would inherit a life estate in property held in joint tenancy. The remainder was to go to their respective children from previous marriages. The court stated that "[t]his is not a case of a joint tenant attempting a severance of the joint tenancy by a testamentary devise to a third party, but rather we think it to be an agreement and contract, testamentary in form." 168 Kan. at 258.

The general rule is that parties cannot unilaterally terminate their joint tenancy interests by disposing of property in a will. *In re Estate of Laue,* 225 Kan. 177, 185, 589 P.2d 558 (1979).

Although Sheryl's July 2000 will did not specifically state that he intended to sever any joint tenancy interests, it devised all of the property he owned to his children and expressed his intent not to leave any part of his property or estate to Ruby. Sheryl's will was not a mutual and contractual will. Sheryl's execution of the will did not succeed in severing the interests held with Ruby in joint tenancy. See *In re Estate of Laue,* 225 Kan. at 185.

## VII. Trust

Next, Arthur claims that Sheryl severed his joint tenancy interest when he transferred his interest in joint tenancy properties to a trust. Arthur also argues that Ruby conceded the same in her motion for summary judgment, but argued that such action was precluded by the restraining order.

Sheryl's trust document stated that he and Ruby had "entered in a property settlement agreement settling all of their property

right[s]." We have already stated that there was no such agreement. Although the trust stated that Sheryl had transferred all assets "presently owned or hereafter acquired," it also excepted from inclusion any properties held "in joint tenancy with rights of survivorship between or among Grantor and any other joint tenant(s)" and expressly excluded all property previously made subject to any beneficiary, POD or TOD designations. Transferring marital property to a trust violates the restraining order prohibiting disposal of any assets during the pendency of the divorce proceedings.

## VIII. Estate Planning

Arthur argues that the restraining order did not restrain the parties from effecting an estate plan and that Sheryl's actions did not result in any assets being removed from the jurisdiction or transferred until his death. Even though the actual transfer would not take place until death, these items had value at the time the changes were made and such transfers affect the value of the marital estate. Arthur maintains that Sheryl's actions did not deprive the district court of the "right, power and jurisdiction to divide the property in the divorce." That is not the point. The marital estate was diminished in value by these changes.

Arthur maintains that Sheryl's actions during the pendency of the divorce only affected "expectant interests." That is not true. Each of the items that Sheryl attempted to transfer were assets of the marital estate. K.S.A. 2002 Supp. 23-201(b) states that marital property is property "owned" by the parties. "Ownership" is "[t]he collection of rights allowing one to use and enjoy property, including the right to convey it to others." Black's Law Dictionary 1131 (7th ed. 1999).

Here, the POD, TOD, and insurance beneficiary designation may have been considered expectancies but the assets themselves were not. The restraining order stated that neither party could dispose of assets "except in the normal course of business." The purpose of the restraining order is to preserve the status quo between the divorcing parties as to marital property. *Wear*, 263 Kan. at 179. Sheryl's estate planning was in violation of the restraining order.

## IX. Life Insurance

Arthur maintains that Sheryl did not violate the restraining order by changing the beneficiary of his Ameritas life insurance policy. He claims that a beneficiary designation in a life insurance policy is a "mere expectancy interest." Arthur ignores the fact that the life insurance policy had a cash value of $45,720.95, while the estimated death proceeds were $64,425. The policy premiums were paid during the course of the marriage, although Arthur maintains that the policy was procured before Sheryl's 28-year marriage to Ruby.

In *Wear*, two life insurance polices for Arilla were purchased. After Arilla filed for divorce, she changed the beneficiaries on both of her policies from William to her parents. While the divorce was pending, Arilla was killed in a car accident and the proceeds of both insurance policies were paid to Arilla's parents. There was no restraining order in effect. The Kansas Supreme Court, citing *Hollaway v. Selvidge*, 219 Kan. 345, Syl. ¶ 4, 548 P.2d 835 (1976), stated: "A beneficiary has only an inchoate right to the proceeds of a policy, subject to being divested at any time during the lifetime of the insured, by transfer, assignment, or change of beneficiary." 263 Kan. at 178.

Further, the *Wear* court found that the policies "and the right to receive the insurance proceeds upon the death of the insured" were marital property because the policies were obtained and paid for during William and Arilla's marriage. 263 Kan. at 179. However, the court concluded that "[t]he ownership interest created under K.S.A. 23-201(b) in marital property is for a property division under K.S.A. 60-1610. As stated in [*In re Marriage of Wilson*, 245 Kan. 178, 181, 777 P.2d 773 (1989)], if there is no divorce because of the death of a spouse, there will be no division of marital property." 263 Kan. at 184.

In *Wear*, a property settlement had not been finalized and no divorce decree had been entered when Arilla died. Importantly, the lower court had not issued an order restraining William and Arilla from disposing of any assets during the pendency of the divorce.

Absent entry of a K.S.A. 60-1607 order restraining the parties from changing beneficiaries on life insurance policies, K.S.A. 23-201(b) imposes no restrictions on either party from making such changes during the pendency of the divorce. 263 Kan. at 184.

In *Wear*, the Kansas Supreme Court stated:

" 'A temporary restraining order or injunction obtained in order to prevent an insured spouse from transferring property during pendency of divorce proceedings may also preclude the insured from changing beneficiary during pendency of suit, notwithstanding that no precise reference was made to life insurance policies. Any such temporary order is effective only as to actions taken after the order is made, and cannot invalidate the insured's prior change of beneficiary in accordance with the rights and procedures under the policy terms.' " 263 Kan. at 182 (quoting 4 Couch on Insurance 3d § 64:20 [1996]).

Both parties cite cases that are not controlling on this court, and they are distinguishable factually from the instant case. They are not persuasive and will not be examined further. We find that Sheryl's Ameritas life insurance policy is marital property, and the district court did not err in finding that Sheryl violated the restraining order when he changed the beneficiary designation.

### X. *POD and/or TOD accounts*

Arthur maintains that the district court erred in finding the restraining order prohibited Sheryl from designating POD and TOD beneficiaries for three accounts. Arthur claims that the designations represented Sheryl's efforts to plan an estate.

POD bank accounts are described in K.S.A. 9-1215 as a contractual relationship between the account owner and bank, providing that the balance of the owner's account, or the balance of the owner's legal share of a deposit account, shall be made payable to a beneficiary on the death of the owner. The account owner retains the right, during his or her lifetime, to withdraw funds on deposit in the account as though no beneficiary has been named, and to change the beneficiary. The beneficiary's interest does not vest until the account owner dies. Ordinarily, beneficiary registration may be canceled or changed at any time without the consent of the beneficiary. K.S.A. 17-49a06.

Neither of the parties contends that the accounts were not marital property. A TOD or POD beneficiary has no vested or indefeasible interest during the lifetime of the account owner, but only a revocable expectancy contingent upon being the beneficiary at the time of the insured's death. See *Wear*, 263 Kan. at 178. Sheryl's domestic relations affidavit stated that the Van Kampen Fund was valued at $57,584.64, the Edward Jones account was valued at $13,661.93, and the Iola Bank checking account was valued at $6,964.50. It is evident that these accounts had value as marital assets when Sheryl executed the changes.

Where accounts are marital property and a divorce is pending with a restraining order in effect, changing beneficiary designations violates the restraining order. Sheryl's beneficiary designations on the TOD and POD accounts did not deprive the court of jurisdiction over these assets, even though the divorce action abated at Sheryl's death, because the changes were done during the pendency of the action.

Arthur further urges this court to adopt the position taken by the Colorado Court of Appeals in *Estate of Westfall v. Westfall*, 942 P.2d 1227 (Colo. App. 1996). Before filing for divorce, the wife changed beneficiaries on two POD accounts. After filing for divorce, the wife replaced her husband's name as a POD beneficiary with that of her brother on two joint accounts. She then committed suicide before the divorce was final. A temporary restraining order prohibited disbursement from the accounts. The husband asserted that the addition of the brother's name as the POD beneficiary constituted a "transfer" or "encumbrance" of the marital property. The Colorado court concluded that the POD change did not encumber marital property. 942 P.2d at 1230. We disagree with this holding.

Here, Ruby claims that the POD, TOD, and life insurance beneficiary designations paid out to Arthur and Susan leave insufficient funds to satisfy her elective-share rights. The TOD and POD accounts were subject to the restraining order and the changes were made by Sheryl in violation of the order.

### XI. Invasion of Privacy Claim

Arthur claims that the district court erred when it found Sheryl's invasion of privacy claim against Ruby abated at his death.

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another, or his or her private affairs or concerns, is subject to liability to the other for invasion of his or her privacy if the intrusion would be highly offensive to a reasonable person. *Moore v. R.Z. Sims Chevrolet-Subaru, Inc.*, 241 Kan. 542, Syl. ¶ 1, 738 P.2d 852 (1987).

Sheryl and Ruby were joint owners of two residential properties situated on the same block in LaHarpe, Kansas. When Ruby filed for divorce, she resided in one house while Sheryl resided in the other. The restraining order granted Ruby temporary possession of the house in which she resided. It did not grant Sheryl temporary possession of the smaller home; however, the restraining order provided that both parties were "restrained from harassing one another during this period of time."

K.S.A. 60-1802 does not list invasion of privacy as one of those actions which abates at the death of either party. K.S.A. 60-1801 does not specifically provide for survival of a cause of action for invasion of privacy. However, the general rule is that even a close relative may not recover for the invasion of privacy of another. 62A Am. Jur. 2d, Privacy § 20, p. 650.

Despite the foregoing, Arthur urges us to consider decisions by other state courts that the words, "injuries to the person" in survival statutes include invasion of privacy when the invasion causes mental suffering for the plaintiff. See *Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 299, 305-06, 162 P.2d 133 (1945).

Here, the district court found language in *Burroughs v. Thomas*, 23 Kan. App. 2d 769, 937 P.2d 12, *rev. denied* 262 Kan. 959 (1997), which applied K.S.A. 60-1801 to a potential claim of invasion of privacy to be dispositive. In *Burroughs*, a surviving spouse sought disclosure of all the coroner's investigative records concerning the deceased spouse. The district court determined that the coroner's investigative records were public records subject to disclosure under the Kansas Open Records Act. On appeal, the coroner argued for the statutory exemption in K.S.A. 45-221(a)(30), which provides that "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." A panel of this court dis-

missed the coroner's claim for application of the exemption, stating that: "The Kansas survival of actions statute, K.S.A. 60-1801, does not provide for survival of a cause of action for invasion of privacy, which generally may only be claimed by the person whose privacy was invaded." 23 Kan. App. 2d at 772.

While other state courts may have more broadly interpreted the words "injuries to the person" to allow a claim for invasion of privacy to survive the plaintiff's death, the *Burroughs* court clearly indicated that K.S.A. 60-1801 did not provide for survival of a claim for invasion of privacy. We agree with the district court that the invasion of privacy claim abated at Sheryl's death.

Affirmed.

RULON, C.J.: concurring in part and dissenting in part.

I concur with my colleagues to the extent they affirm the trial court's entry of summary judgment in favor of Ruby Nicholas (Ruby) and against the executor of the estate of Sheryl A. Nicholas (Executor) rejecting the executor's claims as to joint tenancy property and the purported Separation Agreement.

I respectfully dissent, however, to the remaining portions of the majority's opinion addressing whether Sheryl's change in beneficiaries as to various transfer on death (TOD) accounts, pay on death (POD) accounts, and life insurance policies violated the restraining order issued in the divorce case. The majority fails to acknowledge that those claims—by Ruby against the executor and against Sheryl's children, Arthur and Susan—were not properly before the district court or this court.

As the majority opinion indicates, Ruby filed a motion to amend her answer in April 2001, seeking to add a counterclaim against the executor and third-party claims against Susan and Arthur, individually. These proposed claims asserted that the change in beneficiary designations while the divorce was pending were fraudulent transfers and sought to impose a constructive trust on the proceeds of certain life insurance policies, TOD and POD accounts.

However, my colleagues fail to acknowledge this motion was never granted by the district court. Leave of court was clearly re-

quired for the pleadings to be amended. K.S.A. 2002 Supp. 60-215(a). In addition, nothing in the record shows that a summons was issued or served on Arthur (in his individual capacity) and Susan. Nor does the record show any voluntary appearance by Arthur or Susan responding to those claims.

Notwithstanding the fact leave was never granted to amend Ruby's answer, both Ruby and the executor addressed Ruby's fraudulent transfer claims in their respective motions for summary judgment. This, at best, might entitle the trial court to deem the issues between Ruby and the executor to be tried by consent.

Even assuming Ruby's counterclaim against the executor was allowed, the trial court's judgment should be reversed. In its judgment, the trial court not only granted summary judgment to Ruby, but ordered that titles to the accounts/policies revert back to the titles as they existed the date the divorce action was filed. The majority acknowledges the restraining order in the divorce decree dissolves upon Sheryl's death. Even though the TOD/POD accounts and the life insurance policy were marital assets subject to the restraining order, and even assuming the change of beneficiaries violated that restraining order, the trial court's authority is limited to providing redress as between the parties in this action.

There appears to be no dispute that once Sheryl died, certain life insurance proceeds and assets of the TOD/POD accounts were paid to Susan and Arthur by the holders of the accounts and policies. Because Susan and Arthur were never properly made parties to this case and never served with process, it violates due process for the trial court to issue an order essentially attempting to alter title to property now held by them as non-parties. See *e.g., Bethany Medical Center v. Niyazi*, 18 Kan. App. 2d 80, 82, 847 P.2d 1341 (1993) (basic elements of due process include notice and an opportunity to be heard at a meaningful time and in a meaningful manner); *Sramek v. Sramek*, 17 Kan. App. 2d 573, 575, 840 P.2d 553 (1992), *rev. denied* 252 Kan. 1093 (1993) (judgment in contempt proceeding was void where order to appear was mailed to rather than served upon party).

Under the circumstances, the most the trial court could properly do in this case, assuming Ruby was effectively allowed to add a

counterclaim against the executor, was to determine Sheryl violated the restraining order and improperly transferred marital assets, calculate the value of the missing assets, determine Ruby's share of those assets, and enter a judgment against the executor for that amount.

For these reasons, I would affirm the trial court's entry of summary judgment in favor of Ruby on the executor's claims against her. However, I would vacate the judgment attempting to alter title to the other assets in dispute. I would remand the case solely for the calculation of Ruby's share, if any, of those assets had they remained in Sheryl's estate and enter judgment against the executor for that amount. Because Ruby failed to proceed, prior to entry of judgment, on her motion to add third-party claims against Arthur and Susan, Ruby should be required to file a separate action against Arthur and Susan should she wish to pursue claims against them.